All the Justices concurring.

## The St. Louis & San Francisco Railway Company v. Archie Kinman.

1. RAILROAD COMPANY—*Stock Killed—Action—Previous Demand.* An owner of stock can maintain an action under the act of 1874, (Gen. Stat. of 1889, ¶¶ 1251–1256,) against a railroad company for injuring his stock, only after a demand for payment for such injury has been made upon some ticket agent, station agent, or upon some other agent of the railroad company having authority to collect or settle claims for such injuries.

2. AGENCY, *Proof of.* And the fact of agency cannot be proved by proof of the oral declarations of the supposed agent himself.

*Error from Greenwood District Court.*

ACTION to recover damages for killing stock. Judgment for plaintiff, *Kinman,* at the May term, 1889. The defendant *Railway Company* brings the case here. The opinion states the facts.

*Geo R. Peck, A. A. Hurd,* and *Robert Dunlap,* for plaintiff in error:

It was improper to ask the plaintiff whether he had a conversation with any of the agents of the defendant about the killing of this stock, for it was wholly immaterial in this case whether the plaintiff may have talked with anybody who might have been an agent of the company or who claimed to represent the company. The statute provides that a demand may be made upon the station or ticket agent, and no doubt a demand might be made upon a claim agent whose duty it is to settle claims, or upon some superior officer having authority in the matter; but it is improper to ask whether he made any demand upon any agent of the company, because such agent might not have authority to act in the premises, and therefore a demand upon such a party would be wholly useless and nugatory. It was also improper to prove the conversation he had with one Spellman, or Spaulding, because there was no evidence in the case to show that Spellman, or Spaulding, was the agent of the company. The only evidence is, that this man claimed to be the company's agent from Wichita; but agency cannot be proved by the declaration of the party who claims to be an agent; and therefore, as there was no evidence outside the mere declaration of the alleged agent himself to show that the conversation was had with a duly-authorized agent of the railroad company, the court erred in permitting evidence to be given as to the alleged demand or conversation had with such a party. There was no other evidence in this case to prove a demand, and it will, therefore, be seen that this error was prejudicial.

No brief for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought in the district court of Greenwood county by Archie Kinman against the St. Louis & San Francisco Railway Company, under the

act of 1874 relating to the killing of stock by railroad companies. (Gen. Stat. 1889, ¶¶ 1251–1256.)   While it appears that the defendant's railway in the present case was inclosed with a good and lawful fence, yet it would seem that the plaintiff had a private crossing over the defendant's right-of-way, and that a gate for the benefit of the plaintiff was placed by the railway company in one of the fences at this crossing; and the only wrong or negligence charged against the railway company was that the gate was not provided with a sufficient fastening, and that by reason thereof the plaintiff's stock in some manner passed through the gate and upon the defendant's right-of-way, where four of them were killed and four injured by the defendant in the operation of its railway. Whatever defect there was, however, with reference to the gate, was known by the plaintiff, and the jury so found; but how the gate came to be open, or how long it had been open when the cattle passed through the same, is not shown.   No one seems to have known anything about it, and the jury could not tell.   Nor did any one see the cattle pass from the plaintiff's field onto the defendant's right-of-way.   The jury found a general verdict in favor of the plaintiff and against the defendant, and assessed the plaintiff's damages at $119, and found a reasonable attorney's fee to be $50, and also made special findings of fact; and the court rendered judgment in accordance with the general verdict for the damages assessed and the attorney's fee; and the defendant, as plaintiff in error, brings the case to this court for review.

Among the errors assigned are errors of the court below in the admission of evidence.   Under the statute above referred to, before an action of this kind can be properly instituted, it is necessary that the plaintiff should first demand payment of the railway company for his killed or injured stock; and this demand should be made upon some proper agent of the railway company.   Sections 2 and 3 of the act read as follows:

"Sec. 2.   In case such railway company or corporation, or the assignee or lessee thereof, shall fail for 30 days after demand made therefor by the owner of such animal, or his agent

or attorney, to pay such owner, or his agent or attorney, the full value of such animal if killed, or damages thereto if wounded, such owner may sue and recover from such railway company or corporation, or the assignee or lessee thereof, the full value of such animal or damages thereto, together with a reasonable attorney's fee for the prosecution of the suit, and all costs, in any court of competent jurisdiction in the county in which such animal was killed or wounded.

"Sec. 3. The demand mentioned in section 2 of this act may be made of any ticket agent or station agent of such railway company or corporation, or the assignee or lessee thereof." (Gen. Stat. of 1889, ¶¶ 1253, 1254.)

It will be seen that under this statute the demand may be made upon any ticket agent or station agent of the railway company; and upon general principles we think it could also be made upon any agent of the railway company having authority to collect or settle such claims; and one of the material questions involved in this case is, whether the plaintiff made any such demand before commencing this action. The only evidence upon this subject reads as follows:

"Ques. State if you had any conversation with the station agent, claim agent, or any of the agents of the defendant, about the killing of this stock. Ans. I did.

"Q. Now state what that conversation was concerning the killing of this stock. A. I had a conversation with Mr. Spellman; I believe he introduced himself as the company's agent, from Wichita.

"Q. Spaulding, was it not? A. Spellman or Spaulding —some such a name; he claimed to be the company's agent, from Wichita; he came out to see me there about the matter, and I tried to settle with him.

"Q. State what he said and what you said. Just go on and state what was said right there. A. Well, he proposed settling with me.

"Q. You just state whether the claim agent was there — came there — and talked with you about the payment of the damages that you had sustained by the killing of those animals and the crippling of them. A. He said that it was his business to settle with me, and he came there to see if we could settle.

"Q. Now, you may state if you told him the amount of

money you wanted his company to pay you for the damage and killing of your critters, that you have brought this action for.   A.   I did.

"Q.   You may state what you told him—just tell the jury the amount that you told him you was damaged and that you wanted him to pay you for.   A.   I told him the damage was $119.

"Q.   You told him you wanted your pay?   A.   Yes, sir, I did."

Proper objections and exceptions were taken to all this evidence.   It would seem to us that all this evidence was incompetent, and that it was not shown that any proper demand was ever made by the plaintiff upon any proper agent of the railway company.   What kind of an agent "Spellman" or "Spaulding" or the man with "some such name" was, is not shown.   Indeed, it is not shown by any competent evidence that he was any kind of an agent of the railway company at all.   The first question above quoted was to ascertain whether the witness ever "had any conversation with the station agent, claim agent, or *any of the agents* of the defendant" about the killing of the stock.   The witness answered that he had; *but what kind of an agent* did he have the conversation with?   Was it an agent to procure ice, or water, or lights, or some other kind of an agent?   But the witness does not even know that he was an agent at all, except that "Spellman," or "Spaulding," or whatever his name might have been, "introduced himself as the company's agent, from Wichita."   This was not sufficient.   "Agency cannot be proved by proof of the oral declarations of the supposed agent himself." (*Mo. Pac. Rly. Co. v. Stultz,* 31 Kas. 752; *French v. Wade,* 35 id. 391.)   And without proof of a proper demand upon a proper agent of the company, of course the plaintiff cannot maintain his action.   Such an action could not be maintained at common law at all; and it can be maintained under the statute only by a substantial compliance with the statute.   It does not appear from any competent evidence in this case that the statute has been complied with on the

part of the plaintiff below. The court below erred in admitting the foregoing testimony.

Several other questions are presented by counsel for plaintiff in error, defendant below, but we do not think that it is necessary to consider them. .

The judgment of the court below will be reversed, and the cause remanded for a new trial.

All the Justices concurring.