Argued October 7; decided November 11, 1895.

# CONNELL *v.* McLOUGHLIN.

[42 Pac. 218.]

1. SOURCE OF AGENT'S AUTHORITY.— The existence of an agent's authority depends upon the intention of the principal, and is purely a question of fact: *Glenn* v. *Savage,* 14 Or. 567, cited and approved.

2. QUESTION FOR JURY.— If on a trial there is any dispute regarding the facts, or if there may reasonably be a difference of opinion as to the deductions therefrom, the matter should be submitted to the jury: *Hedin* v. *Suburban Railway Company,* 26 Or. 155, cited and approved.

3. PROOF OF AGENCY.— The authority of an agent cannot be proved by the alleged agent's own statements or acts, unless it be also shown that the principal knowingly acquiesced therein.

4. POWER OF AGENT TO EXECUTE NOTE.— An agent authorized to manage and dispose of a sash and door manufacturing plant has no authority to execute a note in the name of his principal in payment for lumber, it not appearing when the lumber was purchased, or that it was used or intended for the benefit of the principal.

5. PRESUMPTION FROM SUPPRESSED EVIDENCE— AGENCY.— Where the authority of an alleged agent to execute a note, in an action thereon against the principal, is in issue, the failure of the agent, who was an unwilling witness, to produce his power of attorney, does not of itself raise a presumption that he was authorized to execute the note.

APPEAL from Multnomah: HARTWELL HURLEY, Judge.

This is an action by Samuel Connell against Martha E. McLoughlin to recover upon a promissory note alleged to have been executed by an agent of the defendant. The facts are that one E. McLoughlin, being the lessee of certain premises in the City of Portland, owned a building thereon in which he operated a sash and door factory under the firm name and style of the Portland Door and Lumber Company; that on June seventh, eighteen hundred and ninety-three, for the expressed consideration of seven thousand dollars, he executed a bill of sale to his mother, the defendant, in which he assigned all his right, title, and interest in

and to said building, and also transferred to her all the machinery, tools, and furniture therein, together with the stock of merchandise and material on hand, which bill of sale was duly recorded on the day succeeding its execution; that McLoughlin took a power of attorney from his mother authorizing him to dispose of the property so transferred to her, and continued to operate the factory for her under the same firm name; that one E S. Bryant having furnished to said firm for use in the factory lumber and materials of the reasonable value of four hundred and fifty-two dollars and twenty-one cents, McLoughlin, on June seventh of that year, as evidence of the amount due Bryant, executed to him a promissory note, payable in three months, and signed the same "Portland Door and Lumber Company, per E. McLoughlin, Manager"; that Bryant, in consideration of three hundred dollars to be paid to him, if the amount due thereon could be collected from the defendant, assigned it before maturity to the plaintiff, who alleged in his complaint the necessary facts to show that he was the owner and holder thereof.   The defendant denied the material allegations of the complaint, and upon a trial of the issues thus joined the plaintiff introduced his evidence and rested, whereupon the defendant moved the court for a nonsuit, which, being denied, a verdict was rendered for the plaintiff, and from the judgment thereon the defendant appeals.                    REVERSED.

For appellant there was a brief by *Messrs. Davis, Gantenbien and Veasie,* and an oral argument by *Mr. Arthur L. Veasie.*

For respondent there was a brief and an oral argument by *Mr. Albert Abraham.*

Opinion by MR. JUSTICE MOORE.

1.   It is contended that the plaintiff failed to introduce any evidence tending to show McLoughlin's authority to execute the note for the defendant, and that the court therefore erred in denying the motion for a nonsuit.   The existence of an agent's authority depends upon the intention of his principal, and is purely a question of fact: *Glenn* v. *Savage*, 14 Or. 567 (13 Pac. 442).

2.   If there be any dispute as to the fact in issue, it is clearly a question for the jury; or, if there be no dispute as to the facts, but there may reasonably be a difference of opinion as to the inferences and conclusions deducible therefrom, it is the province of the jury to determine the question: *Goshorn* v. *Smith,* 92 Pa. St. 435; *Herbert* v. *Dufur,* 23 Or. 462 (32 Pac. 302); *Hedin* v. *Suburban Railway Company;* 26 Or. 155 (37 Pac. 540).   The witness Bryant testified that when he accepted the note he supposed McLoughlin was a member of the Portland Door and Lumber Company, and that he did not know the defendant, nor ever heard of her, while McLoughlin testified that his power of attorney only authorized him to dispose of the property, stock, and material, and that he had no direct authority from his mother to execute the note.   Assuming that a conclusion could be based upon a want of proof, and that it might reasonably be inferred that, while the power of attorney did not authorize McLoughlin to execute notes for his mother, he acquired such authority by some other means, and that, although the power to do so was not directly conferred, it was clearly implied, such an inference would not authorize the court to submit the question to the

jury, for the inference so deduced could not be of greater weight than a positive declaration by Mc-Loughlin that he had authority to execute notes for his mother, in the absence of any proof that she knowingly acquiesced in such statements, if made by him.

3. The rule is well established that the authority of an agent cannot be proved by his own statements that he is such, in the absence of evidence that the principal knowingly acquiesced in such declarations: *Graves* v. *Horton,* 38 Minn. 66 (35 N. W. 568); *Hatch* v. *Squires,* 11 Mich. 185; *Streeter* v. *Poor,* 4 Kan. 412; *St. Louis Railway Company* v. *Kinman,* 49 Kan. 627 (31 Pac. 126). The authority of one person to act for another rests upon the intention of the principal to be bound by the acts and contracts of his agent. In controversies between the principal and his agent this intention may be proved by the written commission conferring the power, or by acts or declarations of the principal in acknowledgment of the agent's authority; while in actions between the principal and third persons, growing out of their contracts with his agent, the intention of the principal may be proved in the same manner as in controversies between him and his agent, and in addition thereto it may be inferred from apparent authority, by proving that the principal knowingly permitted the agent to assume, or that he held the agent out to the public as possessing the necessary power, and hence the validity of a contract made with an agent and the right of action founded on its breach grows out of the intention of the principal to be bound by the act of his agent. A principal is bound by whatever his agent may lawfully do within the scope of the power conferred, and, upon the theory that

where a right is conferred the power is also granted without which the right itself cannot exist, this scope includes whatever the agent may necessarily do in the performance of the particular act expressly authorized: *Law* v. *Stokes,* 32 N. J. Law, 249 (90 Am. Dec. 665). "The authority of an agent," says ANDREWS, J., in *Walsh* v. *Hartford Fire Insurance Company,* 73 N. Y. 5, "is not only that conferred upon him by his commission, but also, as to third persons, that which he is held out as possessing. The principal is often bound by the act of his agent in excess or abuse of his actual authority, but this is only true between the principal and third persons, who, believing and having a right to believe that the agent was acting within and not exceeding his authority, would sustain loss if the act was not considered that of the principal." The principle announced in this case carries the doctrine of liability to the very verge, and proceeds upon the estoppel of the principal, founded upon the familiar theory that where one of two innocent persons must suffer from the act of a third, he who first trusted such third person and placed in his hands the power which enabled him to do the act or permitted him to commit the wrong, must bear the loss. But before the application of this rule of law can be invoked, two important facts must be clearly established, *first,* the principal must have held the agent out to the public in other instances as possessing sufficient authority to embrace the particular act in question, or knowingly acquiesced in the agent's assertions of the requisite authority; and, *second,* the party dealing with such agent must have had reason to believe, and must have believed, that the agent possessed the necessary authority. These two facts must always be established to render the principal liable for the act of his agent in excess

or abuse of his authority, for any person dealing with an agent does so at his peril, and the burden falls upon him to show that the agent possessed the necessary authority: *Anderson* v. *Kissam,* 35 Fed. 699. When Bryant accepted the note he supposed McLoughlin was a member of the firm, and, as such, had authority to execute it; and at that time, never having heard of nor known the defendant, he had no reason to believe nor did he believe, from any knowledge derived from her acts, that she was holding her son out to the public as possessing authority to execute notes for her; and it having been assigned by Bryant to Connell as trustee for him, the plaintiff's right of action cannot be superior to that of his assignor; and hence it follows that if the defendant is liable at all it must be in consequence of the express power delegated to the agent: *Bickford* v. *Menier,* 107 N. Y. 490 (14 N. E. 438).

4. No evidence of an express grant of power from the defendant to her son to execute notes for her was introduced at the trial, but the authority to do so is sought to be inferred from the proof of other facts which show that McLoughlin, after the bill of sale was executed, continued to operate the factory for his mother, who furnished him money for that purpose; that he paid off some of the debts of the old firm with merchandise which was transferred to the defendant, and offered to pay Bryant in the same manner; and that he procured from other factories building material which he shipped to patrons of the Portland Door and Lumber Company and thereby made profits in which his mother had no interest. Conceding that McLoughlin had authority from his mother to do the acts established by the evidence, can it be inferred from the proof of such acts that she also

gave him power to execute notes for her? "When the authority to execute or indorse a negotiable instrument," says Mr. Daniels in his work on Negotiable Instruments, (4th ed. § 292,) "is sought to be deduced from an agency to do certain other acts, it must be made to appear affirmatively that the signing or indorsement of such an instrument was within the general objects and purposes of the authority which was actually conferred. And in interpreting the authority of the agent, it is to be strictly construed." An agent employed to make purchases cannot give a negotiable note on which his principal will be liable: *Brown* v. *Parker,* 7 Allen, 337; *Taber* v. *Cannon,* 8 Metc. (Mass.), 456; *Webber* v. *Williams College,* 23 Pick. 302. An agent employed to manage a store has no authority in consequence of such agency to make or indorse notes in the name of his principal: *Smith* v. *Gibson,* 6 Blackf. 369. "The power of binding by promissory negotiable notes," says HUBBARD, J., in *Paige* v. *Stone,* 10 Metc. (Mass.), 160, "can be conferred only by the direct authority of the party to be bound, with the single exception where, by necessary implication, the duties to be performed cannot be discharged without the exercise of such a power. To facilitate the business of note-making, and thus affect the interest and estates of third persons to an indefinite amount, is not within the object and intent of the law regulating the common duties of principal and agent; neither is the power to be implied because occasionally an instance occurs in which a note, so made, should in equity be paid." It has been held that an agent's authority to execute negotiable paper will be implied when a note has been given for goods or material necessary to the transaction of the principal's business, (*Odeorne* v. *Maxcy,* 13 Mass. 177,) but in such cases, in order to hold the

principal liable, it must appear that the purchases were made for his benefit or authorized by him: *Smith* v. *Gibson,* 6 Blackf. 369.  In the case at bar the evidence does not show whether Bryant furnished the materials constituting the consideration for the note before or after the bill of sale was executed, or that they were for the use or benefit of the defendant or authorized by her.  It follows that McLoughlin, as manager of the sash and door factory, did not have power to bind his principal by the execution of the note, nor can such authority be inferred from the proof of facts by which it is sought to be established.

5.   Counsel for respondent contends that McLoughlin, as a witness for the plaintiff, was unwilling and hostile, and that, having failed to produce the power of attorney from his mother, it must be presumed that if the instrument had been in evidence it would have established his authority to execute the note.  The bill of exceptions does not show that any previous demand had been made to produce the power of attorney, and this witness testified that it had been at one time in his possession, but that he did not know where it was or to whom he had delivered it; and that it did not contain such authority.  Had the plaintiff made a *prima facie* case from the production of other evidence, sufficient by itself to support the judgment, the failure to produce the power of attorney would raise a presumption that it contained the necessary authority; but this presumption does not relieve the plaintiff altogether from the burden of proving his case.  Had other evidence of the contents of the power of attorney been introduced, from which it appeared that sufficient authority had been delegated to warrant the execution of the note,—assuming that McLoughlin

stood in the relation of an adverse party at the trial,—
the presumption invoked might be indulged: Lawson
on Evidence, 137; 2 Wharton on Evidence, § 1268; *The
Life and Fire Insurance Company* v. *Mechanic Fire Insurance
Company,* 7 Wend. 31; *Thayer* v. *Middlesex Mutual Fire In-
surance Company,* 10 Pick. 326; *Gage* v. *Parmelee,* 87 Ill.
329; *Diel* v. *Missouri Pacific Railway Company,* 37 Mo. App.
454. A careful examination of the evidence intro-
duced leads us to believe that it failed to show any
authority on the part of the agent to execute the note
for his principal, and that the court erred in denying
the motion for a nonsuit, for which reason the judg-
ment is reversed and a new trial ordered.

REVERSED.