Argued January 22; decided March 16, 1896.

# HARRISBURG LUMBER CO. *v.* WASHBURN.

[41 Pac. 390.]

1. RELIGIOUS SOCIETIES—"BUILDING"—MECHANICS' LIEN.— A church oc-
cupied by a religious society is a "building," within the meaning of
section 3669, Hill's Code, giving a lien for material used in the con-
struction of any "building," and is subject to levy and sale on exe-
cution, it not being exempt under section 282, Hill's Code.

2. MECHANICS' LIEN—ESTATE CONVEYED BY DEED—PARTIES.— A deed
conveying land to the trustees of a church, and their successors, in
trust for the ministry and membership of the church, subject to its
discipline and order,— the proceeds, if the land be sold, to be dis-
posed of according to such discipline,— conveys the entire estate of
the grantor, and vests such an estate in the trustees as to authorize
them, with the consent of the society, to create a debt subjecting the
property to a mechanics' lien, which may be foreclosed without
making the grantor a party defendant.

3. PRINCIPAL AND AGENT.— In order to estop a principal from denying
the authority of an alleged agent it must be shown that the agent
was held out to the public by the principal as possessing sufficient
authority to embrace the act in question; and that, having reason to
believe, and actually believing, that the alleged agent possessed such
authority, he was dealt with as he would not otherwise have been:
*Connell* v. *McLoughlin*, 28 Or. 230, cited.

4. MECHANICS' LIEN—LIENABLE AND NONLIENABLE ITEMS.— The fact that
a claim of lien for material used in a building includes material
used in a sidewalk around the lot on which the building is located
will not invalidate the lien, where an itemized statement in the
claim renders it possible to determine the exact amount used in the
sidewalk, and the precise amount charged therefor: *Williams* v. *To-
ledo Coal Company*, 25 Or. 426, distinguished.

5. DESCRIPTION IN LIEN—CODE, § 3673.— A notice claiming a lien on a
designated church in a certain town, for material furnished, though
it describes the lots on which the building is situated as lying in
an addition which does not exist, is sufficient, under Hill's Code,
§ 3673, which requires a description sufficient for identification only,
where it is shown that there is but one church of that name in the
town, and that it was built by the contractor to whom the material
was furnished: *Joshua Hendy Machine Works* v. *Pacific Cable Com-
pany*, 24 Or. 152, distinguished.

6. WAIVER OF TERMS OF CONTRACT.— The trustees of a church waive any
objection to seats furnished for the church on the ground that they

do not conform to the plans and specifications, by voluntarily placing them in the church with knowledge of such nonconformance.

7. PRIORITY OF LIENS OVER MORTGAGE.—The lien of a mortgage on land taken after the commencement of the erection of a building thereon is subordinate, under Hill's Code, $ 3671, to liens for materials used in the construction of the building.

8. MECHANICS' LIEN — STATEMENT OF DEMAND — CODE, $ 3673.— A mechanics' lien is not invalidated because of a mistake in computation in favor of the lien claimant in the notice of lien, although the statute requires such notice to contain a true statement of the demand.

APPEAL from Lane: J. C. FULLERTON, Judge.

This is a suit by E. E. Upmeyer *et al.*, as partners under the firm name of the Harrisburg Lumber Company, against C. W. Washburn *et al.*, as trustees of the Methodist Episcopal Church of Junction City, the Sugar Pine Door and Lumber Company, a corporation, and the Board of Church Extension of the Methodist Episcopal Church, a corporation, to foreclose an alleged lumber merchant's lien on certain real property in said city. The facts are that on August tenth, eighteen hundred and ninety-two, the said trustees entered into a contract with one E. Bashaw, by the terms of which he undertook to furnish the necessary materials, erect a church building, and supply the pews therefor, in conformity with the plans and specifications thereof, and executed a bond with sureties for the faithful performance of the conditions of the contract. The Harrisburg Lumber Company delivered to Bashaw lumber and material to be used in the building, of the reasonable value of five hundred and seventy-one dollars and eighty-six cents, and the Sugar Pine Door and Lumber Company also delivered to him

building material and pews to be used therein of the reasonable value of one thousand two hundred and forty-eight dollars and eleven cents. On October seventeenth of that year, and after the construction of said church had been commenced, the said trustees executed to the said Board of Church Extension a mortgage upon the real property on which the church was built, to secure the payment of five hundred dollars. The amount to be paid to the contractor was about three thousand five hundred dollars; and, after having received from the trustees two thousand one hundred and eighty-four dollars, Bashaw left the state without having completed the building or paid for the said lumber and other material. On January eighteenth, eighteen hundred and ninety-three, the Harrisburg Lumber Company, and on the second day of the following month the Sugar Pine Door and Lumber Company, filed liens against the church building to secure the payment of five hundred and seventy-one dollars and eighty-six cents and one thousand two hundred and fifty-eight dollars and eleven cents, respectively. The plaintiffs having commenced this suit, the Sugar Pine Door and Lumber Company, answering, alleged that it had a lien on the property which it prayed might be foreclosed; and the said Board of Church Extension claimed that its mortgage wa- prior to each of said liens, while the trustees denied the existence of both. Replies having put in issue the allegations contained in the several answers, a trial was had, and the court having found that the lumber merchant's liens were invalid, rendered a

decree dismissing the suit, from which the lien claimants appeal.   REVERSED.

For appellant, the Harrisburg Lumber Company, there was a brief by *Messrs. George B. Dorris* and *J. R. Wyatt*, with an oral argument by *Mr. Dorris.*

For appellant, the Sugar Pine Door and Lumber Company, there was an oral argument by *Mr. H. C. Watson*, with a brief by *Messrs. Watson* and *Elkins*, to this effect:

The description of the property in the notice of lien is sufficient under section 3673, Hill's Code. It has been, and doubtless will be contended here, that the Sugar Pine Door and Lumber Company has lost its lien because the claim filed by it with the county clerk, under section 3673 of the Code, does not contain a description of the property sought to be charged with the lien, sufficient for identification. On this point we cite *McNamee* v. *Rauck*, 128 Ind. 59 (27 N. E. 514); *Tidemick* v. *Mining Company*, 78 Cal. 73; *McHugh* v. *Slack*, 39 Pac. 674; *Cleverly* v. *Mosely*, 148 Mass. 280; *Kezartee* v. *Marks*, 15 Or. 537; *Quack* v. *Schmid*, 30 N. E. 514; *Willamette Steam Mills Company* v. *Krenor*, 94 Cal. 205 (29 Pac. 633); *Warren* v. *Quade*, 29 Pac. 828; *Rall* v. *McCrory*, 45 Mo. App. 365; *Martin* v. *Simmons* (Cal.), 18 Pac. 535; *N. W. C. and C. P. Company* v. *Norwegian Danish E. L. A. etc.*, 43 Minn. 449; *Hotaling* v. *Cronise*, 2 Cal. 63; *Tibbitts* v. *Moon*, 23 Cal 212.

The provisions of the statutes of California and Washington relating to the description of the property sought to be subjected to the lien are identical with those of Oregon, and there can be no doubt if our statutes are to be construed as theirs have been that the description of the premises in the case at bar is sufficient: *Willamette Steam Mills Company* v. *Krenor*, 94 Cal. 205; *McHugh* v. *Slack*, 39 Pac. 674. It is a mistaken contention that *Moorehouse* v. *Collins*, 23 Or. 138, and *Hendy* v. *Pacific Cable Company*, 24 Or. 152, have established a different doctrine. In the first case. there was a total failure of proof — there being no evidence offered to show that the premises described in the lien were the same premises as those described in the complaint; and in the second case there was a fatal variance between the allegations and the proof as to the land, and there was no claim of any lien on any building.

It will be noticed that the primary object of our statute is to give the lien upon the building on which the work is done or for which the material is furnished. Section 3669 provides that every person, etc., performing labor or furnishing material to be used in the construction of any building * * * shall have a lien on the same. See also sections 3670, 3671, 3672, and particularly section 3675, which provides that "No lien provided for in this act shall bind any building, structure, or other improvement unless," etc. From these various provisions it is clear the thing to which the lien is to attach, the thing to be described, is the building for which the material was furnished and in the con-

struction of which it was used. The land is an incident, and just how much and what land shall go with the building is not known until the decree of foreclosure is made. It is not necessary that the material man should know anything about the land on which the building is to be erected, not even its location. His claim is upon the building and his contract has no reference to the land: *Wilson* v. *Howell*, 29 Pac. 151. The statute gives a lien upon the building, and so much land upon which the same is situated as is necessary to the convenient use thereof; and the notice must show that the lien is claimed upon the building upon which the work was done. And when the notice fails to assert any claim against the building which is the primary subject of the lien, the attempt to assert and claim on the land, which at best is but secondary subject, must fail. The lien upon the land is incident to the lien upon the building, and only given for the reason that without it the lien on the building might be without value: *Warren* v. *Quade*, 29 Pac. 828.

The law does not require the land upon which the house is built to be described. There is nothing in the statute indicating such a requirement, but on the contrary the statute seems to contemplate a description of the building or structure on which the work was done or material placed. We concede that the "property" might be described by describing the land upon which the building is located by metes and bounds or other approved method of description, and stating that the building subject to

the lien was built upon the land described, but we contend that the building may be designated by a proper description, sufficient to identify it, and the requirement of the statute be thus met. To describe the building and claim a lien on both it and the land on which it stands, as in this case, is as complete a compliance with the statute as to describe the land and claim a lien on the land with the building standing thereon. The description could apply to no property except the property in controversy, and no one would have the slightest difficulty in finding it. The evidence shows, and it is not disputed, that this is the only church at or near Junction City; that it was built by E. Bashaw; that C. W. Washburn and others named above were at the time the church was built and the lien filed, and are now, the trustees of the church, and owned the property upon which it was built. Certainly from these facts and circumstances, to all of which attention is directed by the notice of lien on record, "a party familiar with the locality could identify the premises intended to be described with reasonable certainty." See *Kezartee* v. *Marks and Company*, 15 Or. 537, and authorities there cited.

The claim or notice of lien was filed with the county clerk within the time prescribed by law: Hill's Code, § 3673; *State Sash and Door Manufacturing Company* v. *Norweigan Danish Evangelical Lutheran Augsburg Seminary*, 47 N. W. 796; *St. Paul and Minneapolis Pressed Brick Company* v. *Stout*, 47 N. W. 974; *Ainslee* v. *Kohn*, 16 Or. 369; *Cunningham* v. *Barr*, 25 Pac. 583.

The error in the amount claimed did not invalidate appellant's lien: *Rowland* v. *Harmon,* 24 Or. 529; *McMonagle* v. *Wilson,* 61 N. W. 495.

Appellant's lien is superior to the mortgage held by defendant the Board of Extension of the Methodist Episcopal Church: Hill's Code, § 3671; *Glass* v. *Freeberg,* 52 N. W. 900.

For respondents there was an oral argument and a brief by *Messrs. Joshua J. Walton* and *A. C. Woodcock,* making these points:

The honorable circuit court decided that the property sought to be sold in this proceeding by virtue of the mechanics' lien set forth therein, is not subject to such liens. The statute of our state does not expressly provide for mechanics' liens on property of the nature of that in controversy in this suit. Church property is recognized under our statute as public property to the extent of exempting it from taxation. Our statute also exempts the seats or pew in a church from execution, occupied by a householder or his family. It is also provided that all property of the state or any county, incorporated city, town, or village therein, or of any other public or municipal corporation of like character, shall be exempt from execution. The authorities uniformly hold that property exempt from execution is also exempt from a mechanics' lien. Taking all of the provisions of our statute together, it is fair to conclude that the legislature intended to make such property in the nature of public property.

The other proposition is that said property is not subject to mechanics' liens, for the reason that the trustees of the Methodist Episcopal Church hold said property as trustees for specified purposes, which is set forth in the deed, in evidence in this suit. The said deed recites the following trust conditions, to wit: "To * * * trustees of the Methodist Episcopal Church. The above described premises, conveyed to the said trustees and their successors in office in trust, for the use and benefit of the ministry and membership of the Methodist Episcopal Church of the United States of America, subject to the discipline, usage, and ministerial appointments of said church as from time to time authorized and declared, and if sold, the proceeds shall be disposed of and used in accordance with the provisions of said discipline; to have and to hold the said premises with their appurtenances unto said trustees and their successors in office and their assigns forever." The said trust being set forth in said deed, and the same being on record as notice, the trustees cannot bind the original grantor by doing an act contrary to such trust without the consent of said grantor. No such consent has been shown. Such an estate is not subject to a mechanics' lien: *Peabody* v. *Eastern Methodist Society*, 5 Allen, 540; *Rollin* v. *Cross*, 45 N. Y. 766; *McGraw* v. *Godfret*, 56 N. Y. 611; *Conklin* v. *Bauer*, 62 N. Y. 620; *Haskell* v. *Badeau*, 63 N. Y. 476; *Grisson* v. *Hill*, 17 Ark. 483; Hill's Code of Oregon, § 3672.

Opinion by Mr. Justice Moore.

It is contended on behalf of the lien claimants that the court erred in its findings and decree, while the trustees, in support of the decree, insist: *First*, that the liens were sought to be enforced against a building used by a religious society for public worship, and that such property is exempt therefrom; *second*, that the real property on which the building is erected was "conveyed to the said trustees and their successors in office in trust for the use and benefit of the ministry and membership of the Methodist Episcopal Church of the United States of America, subject to the discipline, usage, and ministerial appointments of said church, as from time to time authorized and declared, and, if sold, the proceeds shall be disposed of and used in accordance with the provisions of said discipline," that, the trust being set forth in said deed, and the same being of record, the trustees had no authority to create a debt against the property by which it could be made subject to a lien without the consent of the grantor, and that, the deed being of record, the lien claimants had notice thereof; *third*, that E. Bashaw, the contractor, was the agent of the Harrisburg Lumber Company, and, having paid him on his express demand therefor, they have discharged the claim of said company; *fourth*, that a part of the lumber so furnished by said company and for which it claims a lien was used in building a sidewalk around the lots belonging to the church, thus rendering the lien invalid; *fifth*, that the lien notice of the Sugar Pine Door and Lumber Company, misdescribes the premises on which the church is erected; *sixth*, that its lien was not filed

within the time limited by law; and, *seventh*, that the pews furnished by it were not made according to the plans and specifications thereof.

1.  Section 3669, Hill's Code, so far as it applies to the case at bar, provides that "Every  *  *  * lumber merchant  *  *  *  furnishing material *  *  *  to be used in the construction  *  *  * of any building  *  *  *  shall have a lien upon the same for the  *  *  *  material furnished at the instance of the owner of the building  *  *  * or his agent." "A church," says Mr. Phillips in his work on Mechanics' Liens (3d ed.), § 171, "is a 'building' within the mechanics' lien law." In *Presbyterian Church* v. *Allison*, 10 Pa. St. 413, the court holds that a church is a "building" in the sense contemplated by the statute, and that the exemption by the legislature of all churches from taxation did not exempt them from the mechanics' lien law, for if it had done so the provisions would have appeared in the statute, and say: "On the whole, we perceive no reason, either religious, moral, or civil, why the mechanics' lien law does not apply to the erection of a church." It is conceded that property exempt by law from seizure and sale under an execution must also be exempt from the mechanics' lien law, unless the statute conferring the remedy expressly provides that such property was meant to be included within its operation: Phillips on Mechanics' Liens, § 179. Our statute exempts from execution "the seat or pew occupied by a householder or his family in a place of public worship": Subdi-

vision 5, section 282, Hill's Code. This exemption is granted upon the theory that the householder is a tenant, and has an estate in a designated pew, but such exemption, being personal, can be maintained only by a householder, and hence cannot be claimed by the trustees on behalf of the society. A house of public worship occupied by a religious society being a "building," and the statute not having exempted it from mechanics' liens, or seizure and sale under execution, it follows that a church is subject to a lien for labor performed upon or material furnished to be used in its construction, alteration, or repair: *Gortemiller* v. *Rosengarn*, 103 Ind. 414 (2 N. E. 829); *Jones* v. *Trustees, etc.*, 30 La. Ann. 711.

2. The deed having recited that the premises were conveyed to the trustees and their successors in office, in trust for a specific use, the question is presented whether they had such an estate therein as would authorize them, with the consent of the society, to create a debt which might subject the property to a statutory lien that could be foreclosed without making the grantor a party to the proceedings. In its discussion counsel assumes that the grantor had an equitable estate in the premises that could not be defeated by the enforcement of a mechanics' lien; but an examination of the provision referred to clearly shows that he had conveyed his whole estate therein, and in case the premises should be sold, the proceeds arising therefrom are to be disposed of and used in accordance with the discipline

29 OR.—11.

of the Methodist Episcopal Church. The owners of the equitable estate in the premises are the members of the society of the Methodist Episcopal Church, for whose benefit the trustees hold the legal title; and, in the absence of any claim to the contrary, it will be presumed that the trustees caused the church to be erected by and with the consent of the members of the society. "No case," says SHERWOOD, J., in *Bushong* v. *Taylor*, 82 Mo. 660, "appears to have been found where the point of the power of trustees to charge the church property has been directly passed upon; but several instances have occurred where such powers have passed unchallenged, and formed the basis of judgments in courts of last resort." Further in the opinion the same learned justice says: "And, looking to the character of the organization and nature of the government of the Methodist Episcopal Church, it would seem clear that the trustees are the agents of the aggregate body of members, at least so far as is necessary to upholding the relief sought for in this case, and that any member who unites with the association, under and subject to the discipline, thereby, of necessity, gives to such trustees authority to act for him within the meaning of the book of discipline, to the extent of his beneficial interest in the property owned by the association, and that, in consequence of this, any debt contracted by such trustees on account of the premises, will be the debt of the members, so far as concerns their beneficial interest, and to the extent of such interest held by the trustees; and it cannot be tolerated that such an asso-

ciation could so convey its property as to place it beyond the reach of a court of equity enforcing the claims of its creditors." The trustees named in the deed are made parties defendant in this suit, and the grantor of the premises, having no estate therein, was not a necessary or proper party.

3. Was Bashaw the agent of the Harrisburg Lumber Company? The evidence upon this branch of the subject is quite conflicting, the plaintiffs positively denying that any such relationship ever existed, while the defendants show that Bashaw represented that he was such agent, and had authority to sell lumber for the company which he claimed to represent, and that he made one or two trifling sales. In three instances he took orders for lumber which the mill company ·supplied, ·but payments therefor were demanded by and made to the company. To entitle the trustees to invoke the principle for which they contend, they must show that the Harrisburg Lumber Company held Bashaw out to the public as possessing sufficient authority to embrace the act in question, and that, having reason to believe and believing that he possessed such authority, they made payments to him which they would not otherwise have made: *Walsh* v. *Hartford Fire Insurance Company*, 73 N. Y. 5; *Connell* v. *McLoughlin*, 28 Or. 730 (42 Pac. 218). Tested by this rule the defense on this ground must necessarily prove unavailing, for the contract for the erection of the church having been made with Bashaw, the payments were due thereunder to him in his indi-

vidual capacity, and not to the Harrisburg Lumber Company. The trustees have not, in our judgment, shown that, relying upon Bashaw's supposed agency, they made payments to him which they would not otherwise have done had they known he was not the agent of the company.

4. It is admitted that a portion of the material for which the lien of the Harrisburg Lumber Company is claimed was furnished to be used in the construction of a sidewalk around the lots upon which the church is erected, and, as the sidewalk forms no part of the "building," no lien could attach to the church under a claim for material furnished to be used for such purposes. Had the claim contained a lumping charge of the amount demanded, and there were no means of ascertaining from the notice itself the quantity and value of the lumber used in building the sidewalk, the lien would be defeated: *Dalles Lumber Company* v. *Wasco Woolen Manufacturing Company*, 3 Or. 527; *Kezartee* v. *Marks*, 15 Or. 529 (16 Pac. 407), *Williams* v. *Toledo Coal Company*, 25 Or. 426 (36 Pac. 159, 42 Am. St. Rep. 799); for a court cannot, from oral evidence, separate items for which a lien is given from those for which no lien can be acquired: 2 Jones on Liens, §§ 1409, 1419. The notice of lien of the Harrisburg Lumber Company contains an itemized statement of all the material furnished, in which is found a charge for one thousand two hundred and sixty feet of lumber used in the sidewalk. This material, with other of a like class, is valued

in the statement at nine dollars and fifty cents per thousand, and, the quantity and value being apparent from the notice, and not dependent upon oral evidence, the notice did not contain a lumping charge, and hence the item of lumber furnished to be used in building a sidewalk did not invalidate the lien. The item of eleven dollars and ninety-seven cents, the value of the lumber used in the sidewalk, will be deducted from the amount of said claim, and the lien of the Harrisburg Lumber Company will be allowed and enforced for five hundred and fifty-nine dollars and eighty-nine cents, with interest from January eighteenth, eighteen hundred and ninety-three, the date of filing the lien, seventy-five dollars for attorneys' fees, and three dollars paid for filing and recording the notice of lien.

5.    The real property on which the church is erected is described as lots number one, two, and the south half of lot three, in block number two in Milliron's Addition to Junction City; and the Sugar Pine Door and Lumber Company having misdescribed the premises in its notice, it is contended that no lien attached in favor of such company to the property in question. This notice states, in substance, that the lien claimant furnished to E. Bashaw material of the value of one thousand two hundred and fifty-eight dollars and eleven cents to be used by him in erecting a church building on lots one, two, and the south half of lot three, in block one in T. A. Williams' Addition to Junction City, for the Methodist Episcopal Church of that

place, and C. W. Washburn, J. W. Starr, J. H. Akers, L. E. Moe, and J. A. Latalia as trustees of said church, and "That said company claims a lien on said building and the premises above described on account of its said claim and demand to the extent thereof." The Sugar Pine Door and Lumber Company in its answer, after having correctly described the premises sought to be charged, and pointed out the misdescription in its notice, alleged the necessary facts to entitle it to a foreclosure of its lien and also: "That the said E. Bashaw built no other church in the said Junction City or in any of its additions, nor did the said church own then nor does it now own any other premises in said Junction City or any of its additions, than those premises on which said church building was built by the said E. Bashaw, as aforesaid, nor does said church own any other church building in said city or any of its additions; and the said description contained in said claim, as aforesaid, is amply sufficient for the identification of said premises." The record shows that at the time this lien was filed the trustees of the Methodist Episcopal Church owned three vacant lots lying due east of the church built for them by Bashaw, but the lien does not describe these lots nor is there any such subdivision of Junction City as T. A. Williams' Addition. The lien having misdescribed the block and addition, the claimant cannot be permitted to aver or prove the correct description of the premises sought to be charged, unless it is manifest that there is a latent ambiguity in the description contained in its notice

(*Kanne* v. *Otty*, 25 Or. 531, 36 Pac. 537); for patent ambiguities and mere mistakes in the description of the subject matter or names of persons contained in a written instrument cannot, except in a suit for that purpose, be amended by averment or cured by extrinsic evidence: *Brauns* v. *Stearns*, 1 Or. 368. ·The church having been built by Bashaw for the trustees and society on block two in Milliron's Addition, and the lien having been claimed against the building so erected, the description of the block and addition, as given in the notice, does not correspond with the designation of the church, and hence a latent ambiguity exists in the written instrument. Mr. Freeman, discussing latent ambiguities in his notes to the case of *Morton* v. *Jackson*, 40 Am. Dec. 107, says: "It is a settled rule that the addition of a false description will be rejected, and the instrument take effect, if a sufficient description remains to identify the thing intended to be described."

Applying this rule to the case at bar, and rejecting the false description of the block and addition, can it be said that a sufficient description of the premises remains by which the property sought to be charged with the lien can be identified? The requirement of the statute is complied with when the notice contains a description of the property to be charged with the lien sufficient for identification: Section 3673, Hill's Code. "The general rule," says STRAHAN, J., in *Kezartee* v. *Marks*, 15 Or. 529, (16 Pac. 407,) "as to what shall be sufficient description to sustain a mechanics' lien seems now to be that if there appears enough in the description to enable

a party familiar with the locality to identify the premises intended to be described with reasonable certainty, it will be sufficient." In *Hotaling* v. *Cronise*, 2 Cal. 60, it was held that a lien which described the property sought to be charged therewith as "the wharf situated on Battery Street, between Pacific and Jackson Streets, in San Francisco," was sufficient. So too in *Tredinnick* v. *Mining Company*, 72 Cal. 78, (13 Pac. 152,) it was held that the designation of "The Red Cloud Mine," being the name by which the property was well known, was a sufficient identification thereof in a notice of a miner's lien. The evidence shows that there is but one Methodist Episcopal Church in Junction City, and this was built by Bashaw, and, under the rule announced in *Kezartee* v. *Marks*, 15 Or. 529, (16 Pac. 407,) there can be no doubt that the property can be identified by every person acquainted with the locality by the simple designation remaining in the notice after excluding the false descriptions. Nor do we deem this conclusion in conflict with that announced in the case of *Joshua Hendy Machine Works* v. *Pacific Cable Company*, 24 Or. 152, (33 Pac. 403,) for in that case no lien was claimed upon any building, and the description being false, by rejecting it there was no property described in the notice to which the lien could attach. The ambiguity was patent, and could not be corrected.

6. The specifications for the pews, the making of which constitute a part of the claim of the Sugar Pine Door and Lumber Company, provide as fol-

lows: "Seats as per detail on the lower floor to be
made of sugar pine. To be on the same circle as
front line of gallery. * * * Short seats in an-
gles of building and four straight seats for wing."
The plan of the church shows an arc, which is de-
signated "Front Line of Gallery." The pews fur-
nished were straight and set in angles conforming
as near as possible with the arc, and it is con-
tended that the company, not having made them
circular in accordance with the specifications, no
lien can be acquired on this account. J. A. Wilson
testifies that Bashaw gave an order for straight
seats, and they were made exactly according to his
order, while Rev. Mr. Wallace testifies that one Kin-
ney, an agent of the Sugar Pine Door and Lumber
Company, examined the plans and specifications,
and that the company's bid was made by him for
the manufacture of the seats with full knowledge
thereof; that he found in the company's shop at Al-
bany a copy of the entire details of the work to be
performed by it, and brought a part of the plans
home with him; that the seats arrived at Junction
City on December thirtieth, eighteen hundred and
ninety-two; that Bashaw set up all but ten, and that
the church people "finished setting up the seats."
If the company agreed to make circular seats, but
failed to do so, the trustees, with knowledge of
such failure, having voluntarily placed them in the
church, waived any objection on that account, for,
the contract having been substantially performed,
the trustees by that act ratified the departure, ac-
cepted the seats, and should pay the reasonable

value thereof: Phillips on Mechanics' Liens, § 147; *Stewart* v. *McQuade*, 48 Pa. St. 191.

7. The Board of Church Extension of the Methodist Episcopal Church having accepted a mortgage of the property after the work had been commenced upon the building, took the same with knowledge thereof, and the lien created thereby must be subordinate to those of the material men, whose materials, having added to the value of the estate, necessarily carry their liens back to the date of the commencement of the work on the building: Section 3671, Hill's Code.

8. The bookkeeper of the Sugar Pine Door and Lumber Company, in adding up the items of the company's claim, made a mistake of ten dollars in favor of the company, but this is not treated in the respondent's brief as a reason for rendering the lien invalid, nor do we think it should vitiate it. It is true the statute requires the claim to contain a true statement of the demand after deducting all just credits and offsets, but this must mean that the property should be charged with no more material than had been delivered, and credited with all payments made by the owner thereof; but an innocent mistake in the computation of the amount ought not, in our judgment, to render the lien inoperative. The Sugar Pine Door and Lumber Company is, therefore, entitled to one thousand two hundred and forty-eight dollars and eleven cents, with interest from February second, eighteen hundred and ninety-three, the date of filing its lien; one hundred dol-

lars, which it is stipulated is a reasonable attorney's fee for foreclosing this lien; and three dollars for the cost of filing and recording the same.

It is contended that the lien of the Sugar Pine Door and Lumber Company was not filed within the time limited by law. This issue involves the question of time when the last shipment of material was made by the company. J. A. Wilson, its agent, testifies that on January fourth, eighteen hundred and ninety-three, at Bashaw's request, there was shipped to him by the lien claimant three doors and a quantity of window stops to be used in the church. Rev. H. S. Wallace, pastor of the church, denies the receipt of three doors after December thirty-first, eighteen hundred and ninety-two, and says there was no place to hang them after that date, but he further testifies that one door came there about the time Bashaw left, or about January twentieth. This witness, on January nineteenth or twentieth, examined and made a copy of the statement of the account of material furnished by the company to Bashaw, amounting to one thousand two hundred and fifty-eight dollars and eleven cents, on the margin of which was written, "December twenty-ninth, eighteen hundred and ninety-two." This statement having been indorsed "O. K.," and signed by Bashaw, was offered in evidence, when it was discovered that the date had been erased. This circumstance, it is claimed, contradicts the witness Wilson, and shows that all the material was furnished prior to January first. Had the evidence shown that the statement was pre-

pared on the date erased from it, such proof, being identical in the amount demanded, would doubtless have been conclusive; but Bashaw did not indorse the statement until January eighteenth, and the testimony of Wilson, corroborated by that of Wallace, shows that material was shipped by the company to Bashaw for the church within thirty days from the date of filing the lien, and hence we must conclude that the date "December twenty-ninth, eighteen hundred and ninety-two," was improperly entered upon the statement, and that the lien was filed within the time limited by the statute. The evidence shows that the trustees have paid Bashaw only two thousand one hundred and eighty-four dollars of the amount agreed to be paid him, and that they hold his bond with sureties for the faithful performance of the conditions of the contract, and this being so, the foreclosure of the liens will not cast the whole burden upon the society. It follows that the decree of the court below is reversed, and one will be here entered foreclosing the said liens, and directing a sale of the premises, and an application of the proceeds arising therefrom to the payment of said liens in the order of their priority, as between the lien claimants and the mortgagee.      REVERSED.