Argued March 21, decided April 4, rehearing denied April 25, 1911.

## HALL v. OLSON.

[114 Pac. 638.]

CONTRACTS—MUTUALITY.

1. Where one promises to pay money to another on performance by the other of a particular thing, lawful in its nature, mutuality of contract exists, because the performance constitutes a consideration for the promise to pay.

BROKERS—CONTRACT OF EMPLOYMENT—CONSTRUCTION—TIME FOR PERFORMANCE.

2. Where a contract employing a broker does not limit the time, he has a reasonable time for performance.

BROKERS—COMPENSATION—TIME—QUESTION FOR JURY.

3. What constitutes a reasonable time for performance by a broker is a mixed question of law and fact for the jury under instructions by the court.

BROKERS—COMPENSATION—INSTRUCTIONS—CONFORMITY TO PLEADINGS.

4. Where a broker suing for compensation alleged a contract fixing no time for completion, instructions, with some support in evidence, on the theory that defendant withdrew the land from sale and so notified the purchaser, were properly refused under an answer pleading an agreement which it claimed expired by limitation of time without performance, but not averring rescission of the contract alleged by the broker and the giving of notice thereof.

BROKERS—COMPENSATION—EVIDENCE—SUFFICIENCY.

5. In an action by a broker for compensation, evidence *held* to sustain a finding for plaintiff on the claim by defendant that he had withdrawn the land from sale.

BROKERS—COMPENSATION—PERFORMANCE.

6. A broker employed to sell real estate must produce a buyer ready, able, and willing to buy, and who accepts the offer on the terms prescribed.

BROKERS—COMPENSATION—PROCURING PURCHASER.

7. A broker suing for compensation alleged that defendant employed him to sell 320 acres of timber land at a price of $18,000, warranting that there were 40,000,000 feet of merchantable timber thereon, and that the purchaser should have the privilege of having the timber examined and scaled; that plaintiff procured a purchaser, but plaintiff refused to permit the purchaser to scale the timber and declined to make the sale. *Held*, not to show the procuring of a purchaser accepting the terms prescribed.

From Multnomah: JONN B. CLELAND, Judge.

Statement by MR. JUSTICE BURNETT.

This is an action by Joseph C. Hall against N. C. Olson, for compensation for procuring a purchaser for defendant's land.

The plaintiff alleges that on August 14, 1908, the defendant employed him to effect a sale of 320 acres of timber land in Marion County at the price of $18,000, warranting that the land had thereon 40,000,000 feet of merchantable timber and agreeing to pay the plaintiff $1,000 for his services in bringing about the sale, no specific time being fixed for completing the transaction; and that within ten days thereafter plaintiff did negotiate a sale of the property upon condition that the premises contain that amount of timber, to be determined by scaling it, and requested the defendant to allow the purchasers, naming them, to cruise the land for that purpose. The complaint also states that it was "agreed between this plaintiff and defendant that the purchasers thereof should have the privilege of having said timber examined and scaled, so as to determine the amount of timber thereon." However, there is no testimony to support this agreement as a condition of the contract between plaintiff and defendant. It is further charged that the purchasers obtained by the plaintiff were ready, able, and willing to purchase and pay for the land; that when plaintiff requested defendant to allow them to scale the timber he refused to do so and declined to make the sale; that by the terms of the contract between the parties

the commission of $1,000 became due and payable from defendant to plaintiff as soon as the sale was consummated; and that when the defendant declined to complete the sale the plaintiff demanded from him payment of said commission, which was refused.

The answer tenders the general issue to every allegation of the complaint, except as to defendant's title to the land, and states in effect that the contract was made August 14, 1908, and provided that if the sale was concluded at $18,000 and the money realized thereon by the seventeenth of that month, but not thereafter, the defendant would pay the plaintiff $1,000 as commission, but that plaintiff did not procure a purchaser within the time or on the terms stipulated.

The reply traverses the time limit and the alleged failure to produce a purchaser, as mentioned in the answer. From a judgment on a verdict of $1,000 for plaintiff, the defendant appeals.          REVERSED.

For appellant there was a brief over the names of *Messrs. Pearcy & Wintler,* and *Mr. John F. Logan,* with oral arguments by *Mr. Joel N. Pearcy* and *Mr. Logan.*

For respondent there was a brief and an oral argument by *Mr. Thomas O'Day.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. The defendant assigns as error the court's refusal to give to the jury certain instructions which he requested. One class of these instructons was based on the idea that the alleged contract between plaintiff and defendant was wanting in mutuality, and not supported by any consideration. It is elementary that where one promises to pay money to another on performance by the other of a particular thing, lawful in its nature, mutuality of contract exists, because the performance constitutes a consideration for the promise to pay. The other class of defendant's refused instructions proceeds on the theory,

in support of which there is some testimony, that the defendant withdrew the land from sale and so notified the plaintiff some days before the latter produced a purchaser.

2. A real estate broker, where no time limit is prescribed within which he must procure a purchaser, has a reasonable time in which to perform his part of the contract. *Stedman* v. *Richardson,* 100 Ky. 79 (37 S. W. 259).

3. The question of what would be a reasonable time is one of mixed law and fact to be left to the jury, under proper instruction from the court as to the law.

4. If the defendant would rely on a withdrawal of the land from sale he must plead it, with notice to the plaintiff before the purchaser was produced. Such a defense is in the nature of a confession and avoidance. In this case the defendant pleads the agreement which he claims expired by limitation of time without performance, but does not meet the complaint by an averment that he rescinded the contract on which the plaintiff relies. After the expiration of a reasonable time, where no time is specified within which the purchaser must be produced, the defendant would have a right to withdraw the land from sale and thus rescind the brokerage contract, but no such case is made in the answer. The latter class of instructions requested by the defendant is good as an abstract theory; but without the pleading to sustain them they were very properly refused.

5. Conceding, however, that this question was rightly before the court on the pleadings, there is testimony sufficient to take the case to the jury on that point. According to the witness Stewart, the defendant talked to him about the transaction, and said: "I think I will turn this down. I ought to have more money for this"— and when Stewart remonstrated with him on behalf of the plaintiff the defendant said: "I don't know if this

deal is off yet. Let it hang fire a little while yet." The jury might well have taken the two statements together to mean that the defendant was haggling for a better price, but leaving the negotiations open as far as the plaintiff was concerned.

6. The remaining error of which the defendant complains is founded on the refusal of the court to grant a nonsuit at the close of plaintiff's case, and at the end of all the testimony to direct a verdict for defendant. It is sufficient to test this question by the complaint itself. It is the rule in this State that a real estate broker is not entitled to a commission until he produces a purchaser ready, able, and willing to buy the land on the terms offered. In other words, the broker must produce a purchaser who is not only able to buy, but does accept the offer of the landowner in the terms prescribed. To bind the defendant here, the acceptance of his offer must coincide exactly with the terms of that offer to sell. Until this situation is developed, the overtures of the prospective purchaser constitute at best only a counter offer which the defendant is not obligated to accept.

7. According to the complaint the defendant, through the plaintiff as his broker, had published an offer like this:

"I offer my land for sale at $18,000, and warrant that the merchantable timber thereon will scale at least 40,000,000 feet."

Before he can be bound, either to the purchaser or to the broker, the latter must produce a buyer who in effect says: "I accept your offer and warranty, and will pay you $18,000 for your land." The complaint does not disclose this situation. On the contrary, in substance, it puts into the mouth of the alleged purchaser furnished by plaintiff a statement like this:

"I have the money to pay, and I would like to buy your land, if it has on it that amount of timber; but I am

unwilling to close with your offer until I see for myself about the timber. I do not rely on your warranty, and so I retain this avenue by which I may, if I choose, retire from further negotiations."

This is not an acceptance of the defendant's offer. A prospective buyer occupying that attitude is not one ready to purchase, so as to charge defendant for plaintiff's commission. The cause of the plaintiff is not aided by the averment of the complaint already quoted to the effect that the purchaser should have the privilege of examining and scaling the timber. That of itself operates to keep the negotiations open and allow the purchaser to withdraw at his option before incurring liability. If there had been a pre-existing executory contract for the sale of land on which the timber should be of a certain kind and quantity, the purchaser would be entitled to a reasonable time in which to inspect the property to see for himself if it complied with the contract. In this case, however, there is no pre-existing contract, and to insist on such an inspection before accepting the offer to sell does not amount to, but prevents, a perfect acceptance of the offer. Hence the purchaser insisting upon such a condition is not one ready, able, and willing to buy, so as to entitle the plaintiff, who produced him, to his commission. The opinion of this court in the case of *Hardy* v. *Sheedy*, 58 Or. 195 (113 Pac. 1133) is instructive on all branches of this case. There was error of the court in refusing a nonsuit.

The judgment is reversed, and the cause remanded for further proceedings.        REVERSED.