Argued June 20, affirmed July 18, 1922.

## JONES *v*. MARSHALL-WELLS CO.

(208 Pac. 768.)

**Frauds, Statute of.—Satisfying Conditions of Statute of Frauds may Appear in Several Writings.**

1. The satisfying conditions of the statute in regard to contracts which must be in writing, in force when and where the contract was made, may appear in several writings.

**Frauds, Statute of—Memorandum Signed by an Agent is Adequate Providing Agent had Authority.**

2. A memorandum signed by an agent of the party to be charged is adequate providing the agent had authority.

**Principal and Agent—One Relying on Contract With Agent must Prove Authority.**

3. One relying on a contract entered into with an agent has the burden of proving authority.

**Principal and Agent — Traveling Salesman has No Authority to Make Binding Contract of Sale.**

4. A traveling salesman has no authority beyond the mere solicitation of orders or offers to buy which must be submitted to his principal for approval or rejection.

**Sales—Exchange of Telegrams Held not to Constitute a Contract.**

5. Where defendant's traveling salesman, who was authorized to take orders subject to approval, at plaintiff's request wired defendant for prices on cross-head bale ties, and defendant wired back authority to the salesman to quote a certain price f. o. b. Peoria, Illinois, shipment in pool cars, followed by an inquiry by plaintiff about a guaranty of delivery and the refusal of defendant to guarantee delivery and an order written by the salesman containing terms and items of goods not referred to in the telegrams, such exchange of telegrams and correspondence did not constitute a contract.

1. Several writings as memorandum sufficient within statute of frauds, see notes in 2 Ann. Cas. 293; 6 Ann. Cas. 191; 19 Ann. Cas. 1162; Ann. Cas. 1914C, 1010.

From Multnomah: ROBERT TUCKER, Judge.

Department 2.

'AFFIRMED.

For appellant there was a brief over the names of *Mr. Will H. Masters, Mr. W. Y. Masters* and *Mr. Jerome D. Peters,* with an oral argument by *Mr. Will H. Masters.*

For respondent there was a brief over the names of *Messrs. Emmons & Webster* and *Mr. Merwin Rankin,* with an oral argument by *Mr. Hall S. Lusk.*

BURNETT, C. J.—The plaintiff claims to have had a contract with the defendant in writing whereby the latter agreed to sell and deliver to the former within sixty days after February 1, 1918, at Chico, California, 3,000 bundles of 16-gauge 7-foot 6-inch cross-head bale ties at $1.10 per bundle, and 500 bundles of 15-gauge wire ties of the same length and style at $1.27 per bundle, all f. o. b. Peoria, Illinois, and the plaintiff agreed to purchase said merchandise at the terms mentioned, but that the defendant repudiated the contract and failed and refused to deliver the ties in accordance therewith, contrary to plaintiff's repeated demands for the same. Averring that he had performed all of the conditions on his part to be performed and that, on account of the defendant's failure to perform, he was compelled to purchase the merchandise in open market at a higher price, the plaintiff claims damages in the sum of $1,067.34. It is averred in substance in the complaint that the contract was made with one Herb Arens, the agent of the defendant.

The answer admits that Arens was employed by the defendant as a salesman, but the remainder of the complaint respecting him and his alleged authority is denied. All the rest of the complaint is traversed except the conventional character of the parties.

Affirmatively the answer states in substance that Arens was employed by the defendant as a traveling salesman only, his authority being limited to the solicitation of orders from customers and submitting the same to the defendant for its acceptance or rejection, and that he had no authority whatever to contract for the sale of goods for or on behalf of the defendant.

It is conceded that the transaction upon which the plaintiff relies took place in the State of California, and that at the time thereof the law of that state applicable in such transactions was as follows:

"In the following cases the agreement is invalid, unless the same or some note or memorandum thereof be in writing, and subscribed by the party charged, or by his agent. Evidence, therefore, of the agreement, cannot be received without the writing or secondary evidence of its contents: * * 4. An agreement for the sale of goods, chattels, or things in action, at a price not less than two hundred dollars, unless the buyer accepts or receives part of such goods and chattels or the evidences, or some of them, of such things in action, or pays at the time some part of the purchase money. * * " Statutes and Amendments to the Codes of California, 1907, Chapter 291.

The answer negatives all of the exceptions noted under subdivision 4, *supra*, and relies upon the quoted California statute as an element of defense.

The reply admits that the enactment was in operation in the State of California at the time mentioned and that the contract was made there.

Aside from the testimony about the oral declarations of Arens, the transaction of the parties rests entirely in correspondence. It appears that Arens was a salesman for the defendant and traveled in northern California. He called upon the plaintiff at his place of business and solicited him to buy some bale ties. It may be remarked in passing that according to the testimony of the plaintiff, such ties are at least of two kinds: one is a plain wire with a loop twisted in one end. Another kind has a loop at one end, as stated, but at the other end it is fashioned into a hook and the whole is known as a cross-head bale tie. Quoting the plaintiff, "they are sold at a higher price than the single loop." There are also different sizes of wire used in the manufacture of such articles and they are of various lengths but the length is not here involved. Arens quoted prices for 16-gauge wire cross-head bale ties to the plaintiff and at the latter's request addressed to the defendant at Portland, Oregon, under date of January 30, 1918, the following telegram:

"Telegraph me care Parker hardware store a price on seven-foot six-inch sixteen gauge wire cross-head bale ties.

"[Signed]   HERB ARENS."

In response to this telegram, on the same date the defendant telegraphed to Arens at Chico, California, as follows:

"Quote one dollar and ten cents per bundle on seven-foot six-inch ties f. o. b. Peoria, Illinois. Shipment in pool cars.

"[Signed]   MARSHALL-WELLS COMPANY."

One telegram in the series appears to have been lost, but the substance of the testimony is that the plaintiff required Arens to telegraph the defendant for a guaranty of delivery of the goods at Chico, California, by April 1, 1918. The defendant answered on February 1, 1918, by telegram addressed to Arens at Chico:

"Can guarantee shipment car bale ties April first, but cannot guarantee arrival as we do not control transportation lines."

The next document, as quoted in the plaintiff's brief, is as follows:

"Marshall-Wells Company.
Ship to James H. Jones & Co.
At Chico, Calif.
How ship—Freight from Peoria, Ill.
Terms: 60–2–10 from date of ship. When: Not later than April 1st.

. . . . . . . . .
3000 bundles 16 gauge 7 foot 6 inch cross head bale ties $1.10, f. o. b. Peoria, Ill. .
500 bundles 15 gauge 7 foot 6 inch cross head bale ties $1.27 f. o. b. Peoria, Ill."

It is in evidence and it is the admitted vital element of the case that the defendant refused to accept this order or to ship the goods described therein. The plaintiff counts on that paper in connection with the telegrams as a contract of the defendant satisfying the *lex loci contractus* and binding the defendant to deliver the ties, while the contention of the latter is diametrically opposed. On cross-examination the plaintiff admitted that on February 5th he wrote to the defendant that he had given its agent, Mr. Arens, an order for cross-head bale ties, 3,000 bundles No. 16 and 500 bundles No. 15 wire, for shipment April 1, 1918, and also stated in the letter:

"We are requested by Mr. Arens to communicate with you to get your acceptance of the order with guaranty of shipment on or before date stated. We now have your wire under date of February 1, 1918, as follows [quoting the telegram last above mentioned, and continuing the letter]. This is to confirm the order. We would now request your formal acceptance with specifications as stated, the same for our files, and oblige."

The plaintiff also admits receiving a letter from the defendant dated February 8, 1918, in which it is said:

"Under the circumstances we are unable to accept your order unless it would be for the single loop bale ties."

At the close of the plaintiff's case, on motion of the defendant, the court entered a judgment of nonsuit, from which the plaintiff appealed.

1. At the outset, it is proper to say that if all the elements of the statute in force when and where the contract was made are satisfied by the writings presented in proof, it matters not that the satisfying conditions appear in more than one instrument, if the documents are all parts of the transaction involved.

2. The memorandum is adequate, within the meaning of the statute of frauds, though it be addressed to the writer's agent, provided the intent to contract thereby is manifest. If the agent of the party to be charged has authority to do so, it is competent for him to sign the name of his principal to the contract or memorandum. And as to the last of the plaintiff's contentions noted in his brief, where there is any legal evidence to sustain the issues on behalf of the plaintiff the cause must be submitted to the jury as against a motion for nonsuit.

The documents heretofore set out in full and otherwise made manifest by excerpt or effect constitute all of the writings introduced in evidence. The plaintiff relies upon the agency of Arens. As stated by Mr. Justice BEAN in *Smith* v. *Campbell*, 85 Or. 420, 423 (166 Pac. 546):

"Where a third party is sought to be held on a contract alleged to have been executed by an agent, the party seeking to enforce the contract must establish the alleged agency: *Hahn* v. *Guardian Assur. Co.*, 23 Or. 576 (32 Pac. 683, 57 Am. Rep. 709); *Jameson* v. *Coldwell*, 25 Or. 199 (35 Pac. 245); *Connell* v. *McLoughlin*, 28 Or. 230 (42 Pac. 218); *Rumble* v. *Cummings*, 52 Or. 203, 208 (95 Pac. 1111); that an agent's authority cannot be proved by his own statements that he is such an agent, and before the acts of the agent can be shown against a principal, the agency must be shown: *Harrisburg Lumber Co.* v. *Washburn*, 29 Or. 150 (44 Pac. 390); *Connell* v. *McLoughlin*, 28 Or. 230 (42 Pac. 218); *Wicktorwitz* v. *Farmers' Ins. Co.*, 31 Or. 569 (51 Pac. 75); *Hannan* v. *Greenfield*, 36 Or. 97 (58 Pac. 888); *Sloan* v. *Sloan*, 46 Or. 36 (78 Pac. 893); *Toomey* v. *Casey*, 72 Or. 290 (142 Pac. 621)."

3. All that the testimony shows about the authority of Arens is that he could solicit orders for goods and submit them to his principal, the defendant, for acceptance or rejection. The extent of the authority of such an agent had the consideration of this court in *Bagot* v. *Inter-Mountain Milling Co.*, 100 Or. 127 (197 Pac. 824), in an opinion written by Mr. Justice JOHNS, and it was there held that a traveling salesman has no authority beyond the mere solicitation of orders or offers to buy, which must be submitted to his principal for approval or rejection; citing numerous precedents. The Bagot

case settles the doctrine in this state. In addition thereto, the following precedents may be read with profit: *Becker Co.* v. *Clardy,* 96 Miss. 301 (51 South. 211, Ann. Cas. 1912B, 355); *Baird* v. *Pratt,* 148 Fed. 825 (10 L. R. A. (N. S.) 1116, 78 C. C. A. 515); *Bauman* v. *McManus,* 75 Kan. 106 (89 Pac. 15, 10 L. R. A. (N. S.) 1138); *Bowlin Liquor Co.* v. *Beaudoin,* 15 N. D. 557 (108 N. W. 545); *Ryan* v. *American Steel Co.,* 148 Ky. 481 (146 S. W. 1099); *Banks* v. *Harris Mfg. Co.,* 20 Fed. 667.

4. The order quoted from the plaintiff's brief was written by Arens. Even if it should be held otherwise to have become binding upon the defendant as a contract, it appears to have been executed by one not possessing the requisite authority within the meaning of the precedents above cited, and hence is of no effect as the basis of an action for damages. There is no evidence showing any authority in Arens to make a contract binding on the defendant.

5. There is yet another phase of the case. The first of the series of telegrams was a request from Arens to the defendant for a price on cross-head bale ties of 16-gauge wire. The answer to that was to direct Arens to "quote one dollar and ten cents per bundle on seven-foot six-inch ties f. o. b. Peoria, Illinois; shipment in pool cars." This did not correspond with the inquiry for prices on cross-head bale ties. This answer might well be construed as referring to another kind of ties described by the plaintiff in his testimony. Again, it was a notice to the plaintiff, to whom it was shown, that the authority of Arens was limited to quoting a price, without the power to effect a sale. Having received the quotation of price f. o. b. Peoria, Illinois, to be shipped

in a pool car, Arens wrote the direction to the defendant to ship to the plaintiff at Chico, California, by freight from Peoria, Illinois, not merely 7-foot 6-inch ties, but with the additional description of 3,000 bundles of 16-gauge cross-head bale ties and 500 bundles of 15-gauge of the same description. In the light of the doctrine about offer and acceptance, these telegrams do not present a situation where one party makes an offer in explicit terms which the other accepts with identical exactness. As said in *Dodge* v. *Root,* 83 Or. 21, 24 (162 Pac. 254):

"It is well settled that when a contract is to be founded on offer and acceptance, it must be shown that the latter coincides precisely with the former. Unless this appears, there is no agreement: *Hardy* v. *Sheedy,* 58 Or. 195 (113 Pac. 1133); *Hall* v. *Olson,* 58 Or. 464 (114 Pac. 638); *Henry* v. *Harker,* 61 Or. 276 (118 Pac. 205, 122 Pac. 298); *Lueddeman* v. *Rudolf,* 79 Or. 249 (154 Pac. 116, 155 Pac. 172). The evidence of the alleged compact being all in the letters, it is the province of the court to construe them and see if they constitute a contract."

The initial paper was an inquiry at the instance of the plaintiff for a price on 16-gauge wire cross-head bale ties. The defendant authorized Arens to quote $1.10 per bundle on that length of tie, f. o. b. Peoria, Illinois, without specifying the kind of tie, whether plain or cross-head. The method of shipment was prescribed and the place of delivery free on board was likewise an additional element not theretofore mentioned. This was followed by an inquiry about the guaranty of delivery. The defendant declined to guarantee delivery. The order written out by Arens and approved, as he says, by the plaintiff, does not correspond with the previous writing, in that it prescribes terms of sale which

were not previously mentioned.   On the face of these papers there is no situation presented where either the plaintiff or the defendant could not rightly retire from further negotiation and decline to proceed.   A similar situation is thus characterized in *Gould* v. *Cates Chair Co.*, 147 Ala. 628, 633 (41 South. 675, 676):

"So in this instance Smathers did not sell the goods or even contract to sell them.   When the defendant had completed his transaction with Smathers, there had been no binding contract made, or any sale, absolute or conditional.   The defendant could have countermanded his order at any time before the goods were shipped, and the plaintiff could have refused to accept the order.   Neither party had become bound by anything then done.   The order of the defendant was a mere proposal, to be accepted or not as the plaintiff might see fit.   And he could have withdrawn it before its acceptance.   The minds of the parties had not met, and there had been no mutual assent or *aggregatio mentium*": Citing authorities.

In other words, the defendant here was not compelled to obey the direction of its soliciting salesman to ship goods to the plaintiff, and there is nothing appearing in the testimony binding the latter so that he could not withdraw his order.   Under these circumstances there was no contract the breach of which would entitle the plaintiff to damages.   The judgment of nonsuit is affirmed.        AFFIRMED.

BEAN, BROWN and McCOURT, JJ., concur.