THE CHICAGO, KANSAS & WESTERN RAILROAD COMPANY v. T. B. TOTTEN.

1. AMENDED PETITION—*Motion to Strike from Files.* It is not error for the trial court to overrule a motion to strike an amended petition from the files, which was filed by leave of court but out of time, when the original petition sufficiently states the cause of action sued upon, which is not changed by any of the allegations in the amended petition, when it further appears that the motion to strike from the files was not based upon the ground that said amended petition was filed out of time.

2. STOCK KILLED—*Proof of Demand.* Chapter 94, Laws of 1874, is a stringent one, and he who would avail himself of its benefits must bring himself clearly within its terms, and to sustain an action under said statute against a railroad company for the killing of stock, there must be proof of a demand in accordance with the provisions of § 2 of said act.

3. RAILROAD COMPANY—*Operating its Road, When.* Where a railroad company is constructing a line of road, and has completed the same for a considerable distance, and is running its engines and cars over the portion which is completed for the purpose of carrying material for the further construction of the road,

such railroad company is operating its road within the meaning of chapter 94, Laws of 1874.

4. HORSES KILLED — *Ordinary Care* — *Findings* — *Judgment* — *Error*. Where an action is brought under chapter 94, Laws of 1874, for the value of a team of horses alleged to have been killed by a railroad company while operating its line of road, and the court instructs the jury in the trial of said cause that if said road was not fenced, and said team of horses was killed by the said railroad company while operating its said road, and proper demand was made upon said company before the commencement of the action, then plaintiff was entitled to recover, unless it appeared from the evidence that said plaintiff, or the person having charge of said team of horses for him, was guilty of a want of ordinary care but for which the accident would not have happened, and the evidence shows and the jury finds that the person having charge of said team for the plaintiff was guilty of such want of ordinary care, *held*, the defendant was entitled to a judgment upon such findings, under the instructions of the court, and it was error for the court to overrule a motion of the defendant to that effect.

MEMORANDUM.—Error from Reno district court ; L. HOUK, judge. Action by T. B. Totten against the Chicago, Kansas & Western Railroad Company to recover damages. Judgment for plaintiff ; defendant brings the case here. Reversed. The opinion herein, filed October 23, 1895, states the material facts.

*A. A. Hurd, O. J. Wood,* and *W. Littlefield,* for plaintiff in error.

*D. H. Martin,* for defendant in error.

The opinion of the court was delivered by

COLE, J. : T. B. Totten brought his action in the district court of Reno county against the Chicago, Kansas & Western Railroad Company for damages arising out of the alleged killing by said company of a span of horses and the destruction of a wagon on the line of road of said company. Some time after the filing of the original petition in said action, an

amended petition was filed by leave of the court, but without notice to the railroad company, and the overruling by the court of a motion filed by the company to strike said amended petition from the files is alleged as the first error in the case. The grounds upon which said motion was made were : (1) That the facts stated in the amended petition were an enlargement upon those stated in the original petition to the extent of changing a common-law action to a statutory action ; (2) that said amended petition stated a cause of action not alleged in the original petition, and changed substantially the cause of action ; (3) that two causes of action were joined in one count ; and (4) that the statutory action sought to be set up in the amended petition was barred by the statute of limitations at the time it was filed.

We have examined both the original and the amended petition, and are of the opinion that the ruling of the court in this regard was correct. The original petition alleged that the defendant was a railroad company and a corporation owning and operating a line of railroad through Reno county, in the state of Kansas ; that the plaintiff was the owner of a span of horses, describing them, of the value of $400, and a spring wagon of the value of $80 ; that said team of horses hitched to said wagon escaped from plaintiff without any want of care on his part ; that, while they were thus out of the custody of the plaintiff, they went upon the railroad track and right-of-way of the defendant ; that the defendant, for the purpose of operating its railroad, had caused a bridge to be erected over a draw about two miles west of Plevna ; that the horses with said wagon wandered upon said bridge, which was an ordinary railroad bridge ; and that, while said defendant was operating

said railroad and moving one of its trains over the same, the horses were killed and the wagon destroyed by the engine, cars and train of defendant.   It further alleges that the defendant had failed to inclose its right-of-way with a good and lawful fence ; that the team wandered upon the track and bridge, and were so killed in the operation of said road by reason of the failure of the railroad company so to inclose its right-of-way, track, etc. ; that said horses were not killed at or near any public road or crossing ; that plaintiff, more than 30 days before filing said petition, had demanded payment of the defendant for the value of said team ;   and the said petition closed with a prayer for judgment for damages, attorney's fees, interest and costs of suit.

We fail to see that there was anything lacking in the original petition necessary to state a cause of action under the statute, or that the facts stated in the amended petition in any manner changed the nature of the cause of action.   While the original, as well as the amended petition, sought to recover damages for destruction of the wagon, which is not permitted under the act of 1874, the plaintiff in error was in no way injured thereby, because in the final determination of this case the claim for damages, so far as the wagon was concerned, was stricken out by order of the court. It is true the amended petition was filed out of time and without notice, but that was not one of the reasons urged in the trial court for striking the same from the file.

The second ruling complained of is, the overruling of the demurrer to the evidence of plaintiff below.   It appears that the son of the plaintiff below started with the team in question, on the afternoon of Sunday, June 27, 1886, for the purpose of conveying a minister

36—APP.

from Hutchinson to Plevna to fill an engagement; that they reached Plevna in safety, and after the church services had closed the minister and young Totten started with the team and wagon upon their return trip to Hutchinson, and after driving a short distance stopped at the house of Mr. Snyder for the purpose of watering the team. The team and wagon were in the care of young Totten, and were so placed in his care by the plaintiff below. The evidence is conflicting as to just how the team escaped, but it is certain, and the jury so found in answer to special questions, that it was through lack of proper care upon the part of either young Totten or the minister, in whose charge he claims he left the team while he was going after the water. Certain it is that the team ran away with the wagon and that no proper person had charge of them when they started, and that they had not been tied or in any manner secured. And it is also certain from all the evidence that this was a young and spirited team. It was in the night when they escaped, and they wandered about on the prairie and upon the right-of-way and track of the railroad company, and finally upon a railroad bridge over a draw, below which they were found next morning, one of them dead and the other so seriously injured as to necessitate its being immediately killed. At the time of the accident the line upon which the accident happened was in process of construction, and had reached a point a few miles west of Plevna. No passenger or freight trains were being run over the road, but a construction train left Hutchinson in the morning for the end of the line, and returned at night. No fences were built by the defendant company along any part of that portion of the line which had been constructed. To sustain his cause of action, the plaintiff

offered first the testimony of Mr. Vandeveer, one of
his attorneys, who testified that some time in June,
1886, he had been attending court in Stafford county,
returning on Saturday night; to the best of his recol-
lection arriving at Hutchinson on Sunday morning.
He testified that he took passage with his wife upon
this construction train, and about midway between
Stafford and Hutchinson there was a sudden jar of
the train by which he was thrown forward in his
seat; that the train slowed down and stopped; that
he did not get out or make any investigation, but—
he was permitted to testify over objection—that a re-
port was made in the car that night that some stock
had been killed, but as to who made the report,
whether it was from the trainmen or some other per-
son, he was unable to say. He further testified that
within a day or two after this occurrence he learned
of the accident to the team in question. It is difficult
to determine for just what purpose this testimony was
offered, unless it was to show that the road was in
operation for the reason that passengers were be-
ing carried upon this construction train. Certain it
is, that whatever caused the jar to the train on the
night which he testified to, it could not have been
connected in any way with the team in question;
for if he heard of the accident to this team within a
day or two, then he must have come to Hutchinson
on the Saturday night before the accident to the team
happened. As the team did not start from Hutchin-
son until Sunday afternoon, and did not escape until
Sunday night, any testimony which he gave with re-
gard to what happened while he was upon the train
would have no bearing whatever upon this case. Its
admission was erroneous; for the only knowledge the
witness claimed to have of what caused the jar to the

train was the statement of parties upon the train who, the witness frankly admitted, might have been passengers, and the testimony was therefore clearly hearsay. We do not agree with counsel for the plaintiff in error, however, that it was prejudiced by this testimony, as there was further and abundant testimony going to show that the horses were found in the immediate vicinity of the bridge, and that there were marks upon the bridge indicating that this was the point at which they had been injured, which, taken in connection with the testimomy that a train ran over the track that night, was, we think, sufficient, under the decision in *U. P. Rly. Co. v. Harris*, 28 Kas. 206, to submit the question to the jury as to the manner in which the injury occurred. In addition to the testimony of Vandeveer, the plaintiff himself was sworn, and testified in substance to the ownership and value of the team; to the time and manner of their leaving Hutchinson; to the place where and the condition in which they were found on Monday morning; to the appearance of the bridge as to marks and blood being visible thereon; to the direction in which the team seemed to have come, as indicated by the hoof and wagon tracks; and then, to complete a *prima facie* case, offered certain evidence with regard to a demand having been made by him upon the defendant company for the value of the stock killed. His evidence, so far as it relates to the demand, (and this was all the evidence upon that subject,) showed that he handed to one J. H. Sheeley, who he said was agent of the railroad company at Plevna, a written demand. Plaintiff in error claims that this proof of demand was not sufficient: First, for the reason that it claims the evidence discloses that the paper introduced containing the de-

mand was shown to be a copy and not the original,
and that no ground was laid for the introduction of
the copy.   The paper does not appear in the record,
and the evidence is not clear as to which was intro-
duced, the original or the copy, and we therefore
agree with the position of the defendant in error that
it must be presumed to have been sufficient in form
and properly admitted.   But this does not answer the
second objection made by the plaintiff in error, viz.,
that the evidence does not show that service of this
notice was made upon such an agent of the defendant
company as the statute prescribes must be served with
a notice of this character.   Paragraph 1254, General
Statutes of 1889, (being § 3, ch. 94, Laws of 1874,) is
as follows :   "The demand mentioned in section 2
of this act may be made of any ticket agent or station
agent of such railway company or corporation, or the
assignee or lessee thereof."   Defendant in error con-
tends that because the proof showed that Sheeley was
an agent of the railroad company at Plevna and that
Plevna was a station of the railroad line, the jury had
a right to presume that he was station or ticket agent.
But we think that in this position he is in error.   In
passing upon this question of demand in the case of
*K. P. Rly. Co. v. Ball*, 19 Kas. 535, the supreme court,
in an opinion written by BREWER, J., says :

"The statute is a stringent one and imposes new
burdens upon railroad corporations, and he who would
avail himself of its benefits ought to bring himself
clearly within its terms."

And in the case of the *St. L. & S. F. Rly. Co. v. King-
man*, 49 Kas. 631, demand was made upon one who
represented himself to be an agent for the company,
and in passing upon the question of demand the court,
in that case, says :

"The first question above quoted was to ascertain

whether the witness ever 'had any conversation with the station agent, claim agent, or *any of the agents* of the defendant,' about the killing of the stock. The witness answered that he had. *But what kind of an agent* did he have a conversation with? . . . Without proof of a proper demand upon a proper agent of the company, of course the plaintiff cannot maintain his action.''

Under these decisions we think the evidence was not such as met the requirements of the statute. Plaintiff in error further urges that as there were certain affirmative defenses set forth in the answer filed by the railroad company, and no reply seems to have been filed in the case, these averments must be admitted to be true, and that they were such as entitled it to insist that the demurrer to the evidence must be sustained because these defenses were not put in issue. But, as the defendant in error contends, this case was tried upon the theory that a reply had been filed and the objection now urged was not presented to the trial court, and as the case must be tried upon the same theory in this court as in the court below, we think the position of the plaintiff in error is not well taken. But for the failure of proof in regard to demand the demurrer to the evidence should have been sustained.

For the third ground of error, it is contended that the verdict of the jury should have been in favor of the defendant upon all the testimony introduced in the case : First, upon the ground that there was no direct proof that the railroad at the time of the alleged killing of the horses was being *operated*. Under this head the counsel argue that as the road was simply in process of construction, it was not being *operated* within the meaning of the act of 1874, and that a reasonable time should be given a railroad

company to construct its fences after the completion of its line of road.   The act of 1874 was enacted for the purpose of permitting a recovery for injuries to stock inflicted by the railroad company, whether by reason of negligence or not, while operating its road, unless such road is inclosed with a legal fence — that is, to give compensation when the road is not fenced for injuries to stock from the engines and cars of a railroad company, which move swiftly and with great force along the line of its track, and which are therefore not easily avoided by the stock permitted to come upon the track by reason of the lack of the inclosure named in the statute.   Now, operating means acting, exerting some agency or power; and while the term "operating," when used with respect to a railroad, may have come to possess a distinctive meaning, yet it would seem that a fair construction of the statute would be that whenever a railroad company runs its engines and cars upon its line of road, it is operating it.   If it uses it for purposes of general traffic, then it may be said to be in full operation; and if, when part of the road is built, trains are being run over that portion of the road conveying material for the extension of the line, still it may very consistently be said that the portion of the line built is being operated for construction purposes.   In either event the company would be operating its road.   It would seem that a reasonable time should be allowed for the building of fences, but what that reasonable time is would depend in nearly all instances upon the circumstances of the particular case.   It can hardly be claimed that a railroad company, under this statute, ought to be permitted to construct an entire line of road covering a great many miles, before proceeding to fence the same, and be granted immunity for that reason.

Our view would be that, where as in this case a line of road has been built from the city of Hutchinson, in Reno county, to a point as far west as Macksville, in Stafford county, and no fence has been built, an action could be maintained under the act of 1874. We are therefore of the opinion that the first reason urged under this assignment of error is not good.

The second reason urged is that, under the evidence and the special findings, the verdict should have been for the defendant in this case in the court below. As we have before stated, this case must be tried upon the same theory upon which it was tried in the lower court. It clearly appears from the record in this case, including the instructions of the court to the jury, that, in the lower court, the theory upon which it was tried was that, if the horses entered upon defendant's track and bridge by reason of its failure to inclose the same as required by law and were killed by defendant's engine and cars used in operating its road, and if proper demand had been made, the plaintiff was entitled to recover, unless it appeared from the evidence that the plaintiff, or one who had management and possession of the horses under him, failed to exercise ordinary care, prudence and forethought, the lack of which contributed directly to produce the result which is complained of. Among other instructions upon this point, after having explained the degree of care necessary for the plaintiff or the one having charge of the horses under him to have exercised, the court gave the following instruction:

"If you find affirmatively that plaintiff, or his son, was guilty of such want of care, and that, but for this want of care or negligence, the accident would not have happened, in such case plaintiff cannot recover damages for the horses."

Upon this question the jury made the following special findings :

" 12. Ques. Was the team a young and high-spirited team? Ans. Yes.

" 49. Q. Were the horses high spirited? A. Yes.

" 50. Q. Were the horses hitched at the time they ran off ? A. No.

" 51. Q. Was anybody holding the horses at the time they ran off ? A. No.

" 54. Q. If anyone had been holding the horses, is it not probable they would not have run off ? A. Yes.

" 55. Q. What, if anything, was to hinder the horses from running off ? A. Nothing.

" 56. Q. Was it a safe team to leave without being hitched or being held by someone? A. No.

" 57. Q. Did Totten and son know it was a high-spirited team, and that it was unsafe to let them stand unhitched or without someone holding them? A. Yes.

" 66. Q. If the plaintiff's team had been held, or had been hitched with ordinary and reasonable care, is it probable that any injury would have happened to them? A. No."

There is but one conclusion to be drawn from these findings, and that is that the jury believed from the evidence, and so found, that the ordinary care indidicated in the instructions of the court had not been exercised by the person having this team in charge for the plaintiff, and, when they had arrived at that conclusion in their deliberations, the jury should, under the instructions of the court, have returned a verdict for the defendant ; and it was error for the court to overrule the motion made by the defendant below for judgment on the special findings of the jury.

We deem it unnecessary, in view of what has been said in this case, to consider any further alleged errors. The judgment of the district court is reversed,

and this cause remanded, with instructions to sustain the demurrer to the evidence of the plaintiff below.

All the Judges concurring.