CHARLES MACE, by his next friend, Appellee, v. H. A. BOEDKER & Co., Appellant.

127 721
f139 698

127 721
143 601

**Master and servant:** NEGLIGENCE OF CO-EMPLOYÉ: OPERATION OF RAIL-
1 WAY: STATUTES. A corporation constructing a temporary track for operating thereon locomotives and cars for hauling earth used in grading the road, is " operating a railway " within the provisions of Code, section 2071, and a construction company so engaged is liable to an employé for injuries resulting from the negligence of a co-employé.

**Negligence:** SUBMISSION OF ISSUE: EVIDENCE. In an action against
2 a railway construction company for injury to an employé, the

evidence is reviewed and held sufficient to require a submission of the issue of negligence on the part of the company, in failing to warn and instruct the employé of the danger incident to his service, in failing to provide him with a light, and in negligently operating the construction train.

**Contributory negligence:** SUBMISSION OF ISSUE. The question of reasonable care on the part of an employé in the discharge of his services, where the material facts are in dispute and not such that all fair minded persons must draw the same conclusion, must be submitted to the jury. Evidence in the case held to require a submission of the issue of reasonable care.

**Assumption of risk:** PLEADING. Assumption of risk by a servant, which arises from the master's negligence, is an affirmative defense which must be pleaded in answer and sustained by a preponderance of the evidence.

**Assumption of risk.** Assumption of risk is ordinarily a question of fact, and especially where the servant is young, inexperienced or ignorant and there is doubt as to whether he appreciated the peril.

**Same.** To make the question of a servant's assumption of the risk one of law, it must be clearly shown that the servant knew, or, as a reasonably prudent person of his age and experience should have known and appreciated the peril to which he was exposed.

**Submission of issue:** HARMLESS ERROR. Error in submitting a question which should have been determined as a matter of law is without prejudice, where a legal determination should have been in accordance with the finding of the jury.

*Appeal from Wapello District Court.*— HON. M. A. ROBERTS, Judge.

TUESDAY, JULY 11, 1905.

ACTION at law to recover damages for a personal injury. Verdict and judgment for plaintiff, and defendant appeals. *Affirmed.*

*McElroy & McElroy,* for appellant.

*Jaques & Jaques,* for appellee.

WEAVER, J.— It appears without dispute that defendant is an Illinois corporation, and at the time of the accident in question was engaged in grading a line of railroad for the use of another corporation in Wapello county, Iowa. In the performance of this work, defendant constructed a temporary track along the line of the grade, and operated thereon trains of dump cars, moved by small engines, by which device the earth excavated from the cuts was transported and deposited upon the fills. To enable the trains to pass each other, switches and side tracks were made use of at convenient points upon the line. The plaintiff was first employed by the defendant as a water carrier or chore boy, and thereafter was put in charge of one of the switches. The work was being carried on day and night, the plaintiff being on the night shift. During the night the line was illuminated to some extent by incandescent electric lights. While thus employed on or about August 16, 1902, the plaintiff had occasion to go some distance from the switch stand to procure a hoe with which to clean the dirt from the frogs, and as he returned he stepped or stumbled in such a manner that his foot was caught between the main rail and switch rail, and before he could extricate himself therefrom an approaching train ran upon or over him in such a manner as to crush his leg and necessitate an amputation. Negligence is charged against the defendant and its employés in failing to properly block the frogs and guard rails of the switch, failing to have a proper headlight upon the engine which moved the train, failing to furnish plaintiff with a lantern by which he could have signaled the engineman to stop the train, failing to stop the train upon signal of a brakeman who had discovered the plaintiff's peril, and failing to properly instruct the plaintiff as to his duties and the dangers to which he was exposed.

I. The first and principal contention of the appellant is that it is not a railway company, and at the time of the plaintiff's injury was not " operating a railway," within the meaning of Code, section 2071, and is therefore not liable to

the plaintiff for any injury he may have sustained by the

1. MASTER AND
SERVANT: neg-
ligence of co-
employé;
operation of
railway;
statutes.

negligence of his co-employés. The statute referred to provides that "every corporation operating a railway shall be liable" to its employés for all damages sustained in consequence of the neglect or willful wrongs, whether of commission or omission, of the agents, engineers, or other employés of the corporation, when such negligence or wrong is in any manner connected with the use and operation of the railway. It is also further provided (Code, section 2039) that "all the duties and liabilities imposed by law upon corporations owning or operating railways shall apply to all lessees or other persons owning or operating such railways as fully as if they were expressly named therein and any action which might be brought or penalty enforced against such corporation by virtue of any provisions of law may be brought or enforced against such lessees or other persons." If, therefore, the appellant, in constructing a temporary track, and operating thereon locomotives and trains for hauling the earth used in building the grade, was "operating a railway," it follows, of necessity, that under the statute cited the fellow-servant doctrine can have no application to this case.

The usual reason advanced in justification of this class of legislation has been that persons so employed are exposed to great and unusual hazard, and in the exercise of its police power the State is justified in making special rules and regulations for their protection. The hazards against which this protection is provided do not depend upon whether the corporation is engaged in transporting passengers and freight for public accommodation. They exist wherever men are employed to move or operate locomotives and trains from place to place upon a track constructed for that purpose. The work of loading and unloading and coupling and uncoupling cars, the making up and movement of trains, the operation of switches, and all the perils which accompany the handling of these ponderous instrumentalities of transportation, are

no less great because the owner of the tracks, cars, and engines is employing them in and about some private enterprise, than would be the case if he were doing similar labor by similar means in the capacity of a common carrier.    This principle we have recognized in numerous decisions.    For instance, it has been held that the use of a locomotive to pull a rope or cable, by which the transfer of iron rails from one car to another was accomplished, was a part of the hazardous business of operating a railroad.    *Stebbins v. R. R.,* 116 Iowa, 513.    A somewhat similar proposition was affirmed in *Williams v. R. R.,* 121 Iowa, 270.    See, also, *Nichols v. R. R.,* 60 Minn. 319 (62 N. W. 386).    Still more directly in point is the case of *McKnight v. Construction Co.,* 43 Iowa, 406.    In that case the defendant company, being engaged in the work of building a railroad for another corporation, was sued by an employé for injuries occasioned to him by the negligence of a fellow servant, in the management of a gravel train used in hauling material for the grade.    There, as in the present instance, the defendant insisted that, within the meaning of the statute, it was not operating a railway, and, in pursuance of that theory, asked the court to instruct the jury as follows:

(1)  .  .  .  If you find that defendant was engaged only in the business of filling the roadbed, constructing side tracks and riprap, such business would not constitute defendant a corporation engaged in operating a railroad.    (2) The mere fact that defendant used a train of cars propelled and operated by a steam locomotive for the purpose only of hauling gravel or other material to fill up the trestlework where the injury complained of took place does not prove that defendant was engaged in operating a railroad.

These instructions, it will be noticed state in apt and clear terms the substance of the rule for which appellant here contends.    The trial court refused these requests, and instructed the jury as follows:

If you find that the defendant at the time of the injury

complained of was operating the train on its own account for the purpose of constructing the railroad in question, then, for the purpose of this suit, it was operating a railroad. . . . If you find that the defendant at the time of the injury was operating the train in question on its own account, and that plaintiff was an employé of the defendant on said train, and that by the negligence of the defendant he was thrown from the train and injured, and that he did not by his own negligence contribute to the causes which produced his injury, then he is entitled to recover.

The plaintiff recovered judgment, and on appeal the rulings of the trial court were upheld as correct statements of the law. We think there is no logical distinction to be drawn between the rule there approved and the one applied by the district court in the trial of the case now before us. To hold with the appellant on this question is to overrule the precedent furnished by the McKnight Case, and this we are unwilling to do. The words used by Adams, J., in the opinion referred to, may well be adopted by us as applicable to the facts presented by the present record:

The defendant was not operating a railroad in the sense of doing the business for which it was designed — the carrying of passengers and freight. It was merely running trains over it as a part of the means employed in building it. . . . If we were to throw out of consideration the spirit and object of the statute, and look only to a critical construction of its language, we might concede that it would bear the meaning which the appellant would put upon it. The Legislature, however, has seen fit, in consideration of the exceptional hazards of the business of operating a railroad, to abrogate in respect to that business the common-law rule that an employé cannot recover against his employer for an injury received through the negligence of a co-employé. The running of a special train over a railroad is operating it, in a restricted sense. For such a purpose, as well as in the general business of the road, a number of persons must be employed, each dependent for his safety upon the skill and fidelity of others. We are of the opinion, therefore, that the running of special trains over a railroad by a construction

company, in constructing it, is operating the railroad, within the meaning of section 1307 of the Code of 1873.

This conclusion appears also to have the support of the better reasoned cases to which our attention has been called from other jurisdictions. *Schus v. Powers-Simpson Co.,* 85 Minn. 447 (89 N. W. Rep. 68); *Kline v. Iron Co.* (Minn.), 100 N. W. Rep. 681; *C. K. W. R. Co. v. Tottan,* 1 Kan. App. 558 (42 Pac. Rep. 269); *Roe v. Winston,* 86 Minn. 77 (90 N. W. Rep. 122); *Johnson v. R. R.,* 43 Minn. 222 (45 N. W. Rep. 156, 8 L. R. A. 419). See, also, *Glandon v. R. R.,* 68 Iowa, 457. In the Kline Case, above cited, the defendant was operating a narrow-gauge line, with light engines and dump cars, for the purpose of excavating and removing earth, substantially after the manner described in the present case. Under a statute not so broad in its language as our own, the Minnesota court held that the defendant was operating a railroad, within the meaning of the law. That court insists with much force that the law which abrogates the fellow-servant doctrine as to railway business can be held constitutional and valid only because of the peculiar hazard attaching to such employment, and that, therefore, in applying the statute, we have to inquire not whether the defendant is a railroad corporation in the general sense of the term, but whether the labor in which the employé was engaged at the time of his injury was such as exposed him to the hazards which are peculiar to the operation of a railroad. As tersely put by Mitchell, J., in the Johnson Case, *supra:* "If a distinction is to be made as to the liability of employers to the employés, it must be based upon a difference in the nature of their employment, and not of their employers. One rule of liability cannot be established for railway companies merely as such, and another for other employers under like circumstances." It is to be conceded that the courts are perhaps not in entire harmony on this proposition, but the difference has apparently been brought about by varying interpretations of local statutes.

The cases coming the nearest to sustaining the contention of the appellant are *Williams v. Lumber Co.* (C. C.), 113 Fed. 382; *McKivergan v. Lumber Co.* (Wis.), 102 N. W. 333); *Ellington v. Lumber Co.,* 93 Ga. 53 (19 S. E. 21); *White v. Kennan,* 83 Ga. 343 (9 S. E. 1082); *Railey v. Garbutt,* 112 *Ga.* 288 (37 S. E. 360). It appears that the statutes modifying the fellow-servant rule in Wisconsin and Georgia make it applicable to " railway corporations " only, and the courts of those States are inclined to the view that, unless the employer is in fact a corporation owning or operating a line of railway doing business as a common carrier, it is not within the scope of the statute. Our statute, unlike those of Georgia and Wisconsin, is not confined to " railway corporations," but extends to " every corporation " or " person " operating a railway. Code, sections 2039, 2071. And unless we are to emasculate the statute by construction, every corporation or individual undertaking to do business or carry on a work which exposes its employés to the hazards peculiar to railway operation, whether it be in the common carriage of freight and passengers, or confined to the transportation of materials for the private use, advantage, or benefit of the proprietors, must be held liable for the negligence of its employés in and about such business. In short, the liability of a defendant under the statute depends alone upon the nature of the hazard to which the employé is exposed, and not upon the technical character or purpose of the business being done by the employer. Most of the authorities cited by the appellant upon this branch of the controversy are cases in which the courts have held that statutes relating generally to the regulation of railroads and railroad companies are not applicable to street railways. But we do not regard these cases as in point. Street railways, as they existed at the date of this legislation, did not come within the reasons which underlie and support Code, section 2071, and other statutes of like nature. " Employés on such roads are not exposed to such hazards, risks, and dangers as are the employés of railroad

corporations proper." *Schus v. Powers-Simpson Co., supra.*
Street railway corporations do not ordinarily operate long or
heavy trains. Their cars are run at comparatively low rates
of speed, are easily controlled, and, generally speaking, their
employés are exposed to neither the kind nor the degree of
hazard which is encountered by one who works upon and
about a railroad, where heavy trains operated by steam loco-
motives are made use of.

There was no error in the rulings of the trial court in
this respect.

II. We are unable to agree with counsel for the ap-
pellant that there is no evidence of negligence on its part.
It may be noted at this point that the court did not submit
to the jury the question of the defendant's
alleged negligence in failing to block the
switch, but confined its investigation to other charges.
The evidence tends to show that plaintiff was·a boy who
had been reared upon a farm, and, until entering the
defendant's service, had no experience in operating a switch,
or in other work upon or about a railway, and that he was
placed in charge of the switch, and had continued therein
without any warning or instructions from the defendants
or others concerning the danger of such accidents as that
in which he was injured. There was also testimony
from which· the jury might have found that the engine
which ran over plaintiff was not supplied with any headlight,
except an ordinary lantern; that plaintiff, although he had
applied for one, had been given no lantern for use in and
about the work, or for signaling approaching trains; and that
the brakeman upon the train discovered the plaintiff's danger
and signaled the train to stop in time to have prevented the
injury, had proper care been exercised. It is true that some
of these propositions, and particularly the last mentioned,
were vigorously denied by the appellant's witnesses, but as
to none of them was there such an absence of testimony as
would justify the court in refusing to submit the question

*2. NEGLIGENCE: submission of issue; evidence.*

to the jury. It may be true, as contended by counsel, that reasonable care for the lives of its employés did not require the defendant, in operating its line at night, to provide any headlight for its engine, or to anticipate the possibility that a boy placed in charge of the switch, without a lantern to guide his steps, might be caught in a frog or angle of the converging rails; but we are not disposed to announce it as a rule of law applicable to all cases. In this as in most other cases the question of reasonable care depends upon the peculiar circumstances attending the particular act or omission under consideration, and is for the determination of the jury.

So, also, as to the question of contributory negligence. The rule stated by counsel, that plaintiff was " required to use all reasonable care to acquaint himself with the nature 3. Contributory of his employment, the work he was engaged NEGLIGENCE: submission of in, and the dangers to be guarded against," issue. may be accepted as embodying the law applicable to the case; but unless the material circumstances are undisputed, and such that all fair-minded intelligent persons must draw therefrom the same conclusion, it still remains for the jury to say whether he was in fact in the exercise of ordinary and reasonable care for his own safety. His minority and inexperience did not relieve him of the duty of exercising such reasonable care, but reason and justice do not require from the young and unsophisticated the same soundness of judgment or quickness of apprehension as may properly be expected in persons of maturer years and wider experience. Whether, in view of all the circumstances, plaintiff exercised the reasonable care which may fairly be demanded of boys of his age and experience is peculiarly a fact question, on which the court could not have directed a verdict without palpable invasion of the province of the jury.

III. Appellant argues that the court should have held, as a matter of law, that plaintiff assumed the risk of such in-

juries as he claims to have sustained. Assumption of the
risks arising from the negligence of the defend-
ant is an affirmative defense, which the defend-
ant must plead in answer, and sustain by a pre-
ponderance of the evidence. *Sankey v. R. R.*, 118 Iowa, 39.
The charge of negligence as to the construction and care of
the switch having been withdrawn from the jury by the trial
court, it is quite doubtful whether the answer presents any
issue of assumption of risk, as applied to the other charges
made in the petition. The plea as stated expressly and spe-
cifically alleges that the risk assumed by the plaintiff, and
through which he suffered injury, was one which was " ordi-
narily incident to the employment " in which he was engaged.
It is scarcely necessary for us to suggest that the risks thus
assumed by the employé do not include those arising out of
the negligence of the master. *Moran v. Harris,* 63 Iowa,
395; *Knapp v. R. R.,* 71 Iowa, 41; *Conners v. R. R.,* 74
Iowa, 383,

4. ASSUMPTION OF RISK: pleadings.

But waiving the question of pleading, we still find no
error in the refusal of the trial court to hold that an assump-
tion of the risk arising from defendant's alleged negligence
had been conclusively shown by the evidence.
As already suggested, the defense is one upon
which the employer must assume the burden; and, in the
absence of exceptional circumstances not here appearing, it
must go, with the questions of negligence and contributory
negligence, to the jury. This is especially true where the
plaintiff is young, inexperienced, or ignorant, and there is
any room for doubt whether he fully appreciated the perils to
which he was exposed by the defendant's alleged negligence.
See *Shebeck v. Cracker Co.,* 120 Iowa, 414, and *Woolf v.
Nauman,* 103 N. W. Rep. 785.

5. ASSUMPTION OF RISK.

Indeed, about the only reason urged in argument for
holding as a matter of law that the risks were assumed by
plaintiff was bottomed upon the proposition that plaintiff had
been in the employ of the defendant about three months be-

fore his injury, and must have seen and known how the business was conducted, and the dangers to which he was exposed, and, by continuing in the employment, waived his right to object to the matters now complained of. But it must be remembered that he came to this work a young boy, without any practical knowledge or experience by which to measure or pass judgment upon the methods employed by the defendant in managing its line and moving its trains; and it would not be at all unnatural for him to accept those methods as being up to the standards of good railroading, until by increased experience and observation he ought, as an ordinarily reasonable and prudent person of his years, to have learned otherwise. Before the defense of assumption of risk is available, it must appear that the plaintiff both knew and appreciated, or as a reasonably prudent person of his age and experience, ought to have known and appreciated, the peril to which he was exposed by reason of the alleged negligence of the defendant and its employés. *Shebeck v. National Cracker Co., supra.* In our judgment, this fact is not so clearly established as to make the question one of law for the court.

6. SAME.

IV. The exceptions to instructions given and refused are very numerous, and their examination in detail is impracticable. It is sufficient to say that the criticisms made by counsel are in most respects based upon propositions of law upon which we have already ruled in the preceding paragraphs of this opinion, and do not require farther statement or discussion. We may say, however, that conceding, for the sake of the argument, that it was error for the court to submit to the jury the question whether the defendant was engaged in " operating a railway," it was nevertheless error without prejudice, for, if the question is to be held one of law, then we think the court should have decided it, as did also the jury, in the affirmative.

7. SUBMISSION OF ISSUE: harmless error.

The case appears to have been fairly tried, the record develops no prejudicial error, and the judgment of the district court is therefore *affirmed*.