### GEORGE DUFFEY v. CONSOLIDATED BLOCK COAL CO., Appellant.

**Master and servant:** ASSUMPTION OF RISK: PLEADING: INSTRUCTIONS.
1 In personal injury actions the assumption of ordinary risks incident to plaintiff's employment need not be specially pleaded; but where the assumption of risk has reference to that arising out of the negligence of the master, when such negligence is known to the employee and the danger is appreciated by him, it is incumbent on the defendant to plead the same as an affirmative defense, and when not so pleaded the court is not required to instruct on the subject.

**Mines and mining:** EVIDENCE: CUSTOM: HARMLESS ERROR. Where
2 a coal miner was injured by being caught between a loaded car on which he was riding and a rock protruding from the roof of the entry, and a witness testified that he had made a measure-

ment of the height of the entry immediately after the accident, any error in permitting him to state that it was the duty and general custom of the pit committee, of which he was a member, to examine the circumstances of an accident, and that his measurement was made for that reason, was not prejudicial; since the same was purely explanatory and in a sense personal to the witness.

**Same:** CONTRIBUTORY NEGLIGENCE. Evidence of the usual and customary method of performing work is competent on the question of the contributory negligence of one injured while performing the work.

**Evidence:** PREJUDICE: WAIVER OF OBJECTION. A party can not complain of the prejudicial character of evidence which he himself subsequently introduced upon the trial.

**Same:** PAIN AND SUFFERING. Complaints of existing pain of one sustaining an injury are admissible on the question of damages, and need not be confined to a time approximating the date of the injury.

**Examination of witnesses:** DISCRETION. The court has a discretion in the matter of the examination of witnesses; and where a party has rested his cross-examination, having had also the privilege of a re-cross-examination, the court may properly terminate the examination at that point.

**Evidence:** PREJUDICE. Various items of evidence in this case are referred to and held to be nonprejudicial.

*Appeal from Appanoose District Court.*—HON. D. M. ANDERSON, Judge.

, TUESDAY, FEBRUARY 8, 1910.

REHEARING DENIED, THURSDAY, APRIL 14, 1910.

THIS is an action for personal injuries. There was a verdict and judgment for the plaintiff. Defendant appeals.—*Affirmed.*

*Wilson & Smith* and *H. W. Byers,* for appellant.

*Howell & Elgin,* for appellee.

EVANS, J.—At the time of the injuries complained of the plaintiff was a coal miner and an employee of the defendant. The defendant was operating its mine in what is known in the record as the "low coal" district. The coal vein in this region is thin, and the entries are correspondingly low, usually running less than five feet in height. On the day of the accident plaintiff was directed by the pit boss to engage temporarily in driving a mule in one of the entries, known in the record as the "first left entry." That is to say, the cars were drawn by a mule, and the plaintiff was required to bring in loaded cars from the miners' rooms, and to take back empty cars for distribution thereto. According to plaintiff's evidence, he was not familiar with the work, and, he entered some degree of protest against it. The pit boss assured him that it was a safe entry, and pressed the service upon him. According to his understanding, the mule presented some elements of danger. She would "kick and balk." Because of this fact, and because of his lack of experience, he entered upon the work with some trepidation, and doubtless with some lack of skill. He made two round trips without incident, and was engaged upon the third when the accident happened. While bringing in a string of loaded cars, he was caught between the load and a rock overhead, which protruded from the roof at one side of the entry several inches lower than the face of the rock on the other side thereof. In his previous trips he had necessarily passed this point five times, but had not observed this condition of the roof. He had not passed under this protruding rock, but had passed to one side of it, where the roof was higher. There was sufficient evidence to go to the jury on the question of defendant's negligence and plaintiff's contributory negligence, and no serious complaint is made as to the form of the instructions. The jury returned a verdict for the plaintiff for $150.

I.   Appellant complains because the trial court failed

to instruct the jury on the subject of assumption of risk.
Appellant submitted to the trial court three instructions on
the subject, which the trial court refused.
The first of these requested instructions laid
upon the plaintiff the burden of proving that
he did not assume the risk involved in pass-
ing through the entry at the place of injury. This was
clearly erroneous as an abstract proposition. Assumption
of risk is an affirmative defense, and the burden is upon
the defendant to plead it and prove it.

1. MASTER AND
SERVANT: as-
sumption of
risk: plea-
ding: instruc-
tions.

Assuming that the other two instructions asked on the
subject were correct as abstract propositions of law, they
were properly refused because the defendant had not plead-
ed such defense. The only reference to the subject con-
tained in its answer is the following: "Defendant further
states that whatever injuries, if any, the plaintiff re-
ceived were such as he assumed the risk of in his employ-
ment by the company." The term "assumption of risk"
has come to be used in a twofold sense. It is often said
that an employee assumes the ordinary risk that is inci-
dent to his employment. This form of assumption of
risk is often pleaded by defendants in personal injury
cases, although it is quite unnecessary to do so. Assump-
tion of risk in its true sense has reference to those risks
arising out of the negligence of the master when such neg-
ligence is known to the employee, and the danger there-
from appreciated by him. In the first form herein indicated
a specific pleading of assumption of risk of the ordinary
dangers incident to an employment is a mere amplification
of the general denial, and adds nothing to it in a legal
sense. In the second form herein indicated it is an affirm-
ative defense, and must be specifically pleaded as such.
*Sankey v. R. R. Co.*, 118 Iowa, 39; *Mace v. Boedker*, 127
Iowa, 731; *Martin v. Light Co.*, 131 Iowa, 734; *Beres-
ford v. Coal Co.*, 124 Iowa, 39. The most that can be
said of defendant's pleading in this respect is that it sets

up an assumption of risk in the first form.    There is no
suggestion in it that plaintiff knew the defect complained
of, or that he ought to have known it, nor any suggestion
that he knew, or ought to have known, of the danger
arising therefrom.    The trial court therefore properly re-
fused to submit the issue to the jury.

II.    Complaint is made because the court permitted the
witness Coop to testify as to the duties of the "pit commit-
tee," of which he was a member.    This witness had made a
measurement of the height of the entry at the

2. MINES AND
MINING: evi-
dence: cus-
tom: harmless
error.

alleged place of the accident immediately
after it happened.    The testimony complained
of was given in explanation of the circum-
stance of measurement.    He stated, in substance, that when
an accident happened it was the duty and "general cus-
tom" of the pit committee to examine the circumstances of
the accident, and that that was how he came to make the
particular measurement.    The testimony was purely explan-
atory, and was, in a sense, personal to the witness.    It was
clearly within the discretion of the trial court to permit
it, and we can see nothing in it that was in any sense
prejudicial to the defendant.

There was much inquiry of witnesses throughout. the
trial on the subject of "general custom," and appellant com-
plains of it *en masse*.    It is urged upon us that proof of
"general custom" has become entirely too

3. SAME: con-
tributory
negligence.

common in the trial of cases in the "low coal"
district.    It is urged in substance that it has
become the "general custom" of lawyers in personal injury
cases in such district to supply all deficiencies of evidence
as to real facts with proof of some "general custom."    We
find nothing in this case that affords the appellant any just
ground of complaint.    It was incumbent upon the plaintiff
to show freedom from contributory negligence.    The cross-
examination by defendant was directed towards showing
contributory negligence on the part of the plaintiff.    As

bearing upon this question, the usual and customanry method of doing the work was properly shown. These usual and customary methods were often referred to as "general custom." The most that can be said is that it presented a slight inaccuracy in the use of terms.

III. As bearing upon the customary methods obtaining in the mine, the plaintiff produced a written agreement, said to obtain between the miners and operators, and identi-

4. EVIDENCE: prejudice: waiver of objection.

fied it by a witness as being the one "in force" at the time of the alleged accident. To this the defendant objected as incompetent, immaterial, and secondary, and the mere conclusion of the witness. We see little materiality to the evidence complained of, and the court might well have excluded it on that ground. On the other hand, it was plainly nonprejudicial. That the defendant deemed it nonprejudicial is indicated by the fact that later in the trial it introduced the same agreement in evidence.

IV. Certain witnesses on behalf of plaintiff were permitted to testify to his complaints of existing pain at a time long subsequent to the date of the injury. It is urged that

5. SAME: pain and suffering.

this was improper, and that such evidence should be confined to a time approximating the date of injury. Under our previous decisions, this question is not even debatable. *Keyes v. Cedar Falls,* 107 Iowa, 509; *Hamilton v. Coal Co.,* 120 Iowa, 149; *Taylor v. Coal Co.,* 110 Iowa, 40.

V. One Martin was examined by the plaintiff, and testified as to the nature of the duties which devolved upon a driver in the mine. The defendant complains because of

6. EXAMINATION OF WITNESSES: discretion.

the refusal of the court to permit certain cross-examination. The line of such examination is indicated by the following question: "Mr. Martin, in this class of mines, it is a matter of common knowledge among all the miners who work in a mine like this that these entries change overnight, is it not?"

This question was pertinent and proper as cross-examination. The question, however, was put by the defendant to the witness as a recross-examination after the plaintiff had closed his direct examination. There was no claim of oversight on the part of the defendant, and no reason stated why the question was not put during the cross-examination proper. The plaintiff was entitled to the last word with his witness. This was the second time that the witness was called to the stand. The defendant had had the privilege of cross-examination and recross-examination when the witness was first called. He had rested his cross-examination upon the second call. It was within the proper discretion of the trial court to terminate the examination when it did.

VI. Other points are argued by counsel, but the foregoing are illustrative of them all. We can not take the time to discuss them in detail. The following points

7. EVIDENCE: in the brief speak for themselves: "(5) A
    prejudice.    witness should not be allowed to answer a question which calls for an invasion of the province of the jury. . . . (7) What the witness himself would expect to find is inadmissible. (7½) It is legitimate cross-examination of an expert to ask questions pertinent to the matter involved. (8) A witness should not be allowed to say a person looked better or that he believed a person to be more vigorous, before than after an injury. (9) It is an invasion of the province of the jury for a witness to say that there is greater or less liability to be struck under certain conditions. (10) It is a conclusion that mules are liable to take to strangers."

We have no occasion to take issue with the appellant on any of the foregoing propositions, but they present nothing decisive for our consideration. As to the last-stated proposition, the complaint is that the character of the mule was proved by "general custom." That line of proof seems to have been acquiesced in at the trial. Even the defend-

ant proved that it takes some time for a driver to "get onto the way of a mule." Only one mule was involved in this particular case. The testimony was not altogether harmonious as to what a man of ordinary courage might reasonably expect from her. Whether she should be deemed a gentle mule or a kicking mule would seem to depend upon the point of view. One of defendant's witnesses testified that she was not a kicking mule, although he had "seen her kick." Whether he intended thereby to classify her as gentle or as merely normal does not appear. She was said to be twenty years old, and this was deemed to be in her favor. While this lengthened her history and possibly enlarged her reputation, it tended to soften her normal propensities and to reduce her expectancy. To the plaintiff, at least, she seemed a present peril.

Defendant's witnesses contended that the plaintiff ought to have taken his position on the "tail chain" at her heels, with one hand upon her tail, and the other upon the front end of the car. It is said that this position enables the driver to keep his head below the sky line of the mule's back, and that it is one from which he may be easily dislodged in case of accident. But the plaintiff chose to ride upon the "drawbar" in the rear of the first car, and preferred the risk of unknown danger to that which was obvious and imminent. His witnesses testified that this was a proper place, and in accord with the "general custom." This latter "general custom" has arisen somewhat in deference to the "general custom" of mules. It is in this wise that the propensities of the motive power have become involved in the legal subject of "general custom." This is the concrete case. We see no way to apply it to any legal principles with entire safety to the great body of the law, which might well deem the "drawbar" preferable to the "tail chain" in such an application. Unique as the subject is, we are disposed to the opinion that the evidence was generally competent. But whether competent or

incômpetent, it is certain that the defendant was not hurt by it.

We find no prejudicial error in the record, and the judgment below is *affirmed*.