C. C. McCLARY, Appellee, v. GREAT NORTHERN RAILWAY COMPANY, Appellant.

No. 39675.

NOVEMBER 21, 1929.

*Jepson, Struble & Sifford,* for appellant.

*Robert B. Pike* and *Larned F. Brown,* for appellee.

EVANS, J.—The injury complained of occurred September 15, 1927. It resulted from an explosion of a can of denatured alcohol then in the hands of the plaintiff and being used by him as a torch fuel. The plaintiff was severely burned, and suffered injuries likely to be permanent. He was engaged in the operation of a kerosene engine used at the defendant's coal chutes for the purpose of hoisting coal into elevated bins, from which elevation the coal was delivered by gravity to the defendant's engines. As a condition to starting the kerosene engine, it was requisite that it be preheated. This was accomplished by the use of a torch,

which was set upon a bracket and under a cone. The torch was fired by the use of a small quantity of denatured alcohol. This was poured into an open saucer, and was ignited by the use of a match. The burning of the torch was continued until the kerosene engine was sufficiently heated to generate gas from its kerosene content. When that point was reached, the torch fire was extinguished by the mere turning of a screw. On the date above named, the plaintiff had used the engine two or more times, and had fired it each time in the manner here indicated. Immediately after dinner, and at about 12:35 P.M., he proceeded again to fire the engine in his usual manner. From 40 minutes to one hour had elapsed since the previous firing thereof. While he was pouring the alcohol into the saucer or pan, and before the use of the match, and apparently in the absence of fire or spark in any form, an explosion occurred in the alcohol can, from which the plaintiff's burns resulted.

Plaintiff pleaded at great length, and predicated a right of recovery upon many forms of negligence. These may be summarized as charging an unsafe place of work; unsafe tools and instrumentalities; failure of repair; failure to instruct the plaintiff; failure to warn him; that the torch was out of repair; that the plaintiff had notified his superiors thereof; that repair was promised, and not performed; that the defect consisted of a leak in a lower joint of the pipe, where gas escaped and continued to burn after the extinguishment of the main flame; that the alcohol can had no cork or stopper, either at the top or at the spout; that the plaintiff himself was inexperienced, and without knowledge or appreciation of the dangers in which he worked.

The general theory advanced by plaintiff at the trial, and in support of which he introduced his evidence, was that there was a leak at the joint of the torch pipe, from which the gas escaped and fed a small flame while the torch was in operation, and that such flame continued after the extinguishment of the main flame. The testimony in his behalf tended to show that, though the engine was cold, and though no fire was apparent, yet the explosion could not have occurred except by contact of the alcohol vapor with a flame. The problem presented by the evidence was to discover where the hypothetical flame came from. It is to be noted that the explosion was not in the torch, but in the alcohol can. On the same afternoon, after the accident, the

witness Tubbs used the torch, and found a leak therein. He procured its immediate repair. The inference was permissible that the leak had existed prior to its discovery by Tubbs.

The work at the coal chutes involved the employment of three men, of whom the plaintiff was foreman at the time he was injured. He entered the service of the defendant first as a helper of the foreman in this department, on April 27, 1927. Barnes was then foreman. Two months later, Barnes ceased to be foreman, and the plaintiff temporarily took his place for three or four days, when another foreman took charge, and continued until the month of August following, at which time a vacancy again occurred. The plaintiff applied for the place, and his application was accepted; and he became the foreman on August 15th,—one month before the time of the accident. Evidence was introduced in his behalf to the effect that he was uneducated and previously inexperienced, and, in substance, that he had no knowledge or appreciation of the dangers surrounding him. He was 36 years of age; a man of good habits and of an industrious character, having engaged in various occupations.

There is no evidence of the cause of the accident, other than is here indicated. There was no witness to the circumstances of the accident, other than the plaintiff himself. The burden was upon him to show an adequate cause for the accident. It appears to be conceded on both sides that the explosion could not have occurred in the absence of a flame as its immediate cause. Only two possibilities are indicated for the presence of such a flame. One is that the plaintiff had lighted his match while the alcohol can was in his hand; the other is that there was a flame burning at a leaking joint of the torch spout. The alcohol can had no cork or stopper, either at its top or at its spout. It was attended, therefore, with the halo of vapor which its volatility would generate. The plaintiff testified that he had not lighted the match. He insists upon the inference, therefore, that the explosion must have been caused by a flame at the leaking joint. He did not testify that there was a flame at the leaking joint. He claims that fact as one of necessary inference. The argument is that the explosion could not have occurred without contact with the flame; that there was no flame present unless it was at the leaking joint; therefore that there must have been a flame at the leaking joint. If it be assumed that the discovery of a

leaking joint later in the day by Tubbs was a sufficient fact to warrant an inference that the leak existed prior to that time, yet there is no direct evidence that there was a flame burning at the leak at the time of the accident. The plaintiff saw none. As already indicated, the torch was extinguished by the turning of a screw. The torch burned only under air pressure. The turning of the screw released the air pressure. The release of the air pressure is what extinguished the torch. The same release of air pressure which extinguished the flame at the mouth of the spout would presumptively extinguish any flame at any joint in the spout. When the air pressure was released, nothing was left in the spout to make a flame.

I. The plaintiff directed his evidence to the support of his contention that the instrumentalities used by him, including the torch, were defective, and therefore dangerous, and that the  method of using these instrumentalities which was in vogue when he entered his employment, and which was followed by him pursuant to the custom, without knowledge or appreciation on his part of their danger, was in fact faulty, and was such as to subject him to risk and danger. The defendant pleaded not only a general denial, but the affirmative defense of assumption of risk. The court, in Instructions 13 and 14, purported to submit such defense to the jury. These instructions confined the definition of assumption of risk to those dangers which inhere normally in the service to be performed, and which arise without negligence on the part of the employer. Instruction 13 comprised the following:

"The law is that an employee entering upon service accepts and assumes the ordinary hazards and dangers of his employment and such as are incident to it, and if an injury is sustained through such hazards or dangers, he cannot recover. The defendant contends in its answer that the danger of which plaintiff complains was an ordinary risk; that plaintiff had knowledge thereof, and appreciated the risk, and continued in the defendant's employ without objection."

Instruction 14 expressly eliminated any act of negligence by the employer from the doctrine of assumption of risk. Complaint is made of these instructions on this ground. The response

of appellee is that the appellant-defendant did not plead assumption of risk in its true sense, but pleaded only that form of assumption of risk which simply negatives negligence. Reliance is had on such cases as *Duffey v. Consolidated Block Coal Co.*, 147 Iowa 225. In that case we said (228, 229):

"The term 'assumption of risk' has come to be used in a twofold sense. It is often said that an employee assumes the ordinary risk that is incident to his employment. This form of assumption of risk is often pleaded by defendants in personal injury cases, although it is quite unnecessary to do so. Assumption of risk in its true sense has reference to those risks arising out of the negligence of the master when such negligence is known to the employee, and the danger therefrom appreciated by him. In the first form herein indicated, a specific pleading of assumption of risk of the ordinary dangers incident to an employment is a mere amplification of the general denial, and adds nothing to it in a legal sense. In the second form herein indicated, it is an affirmative defense, and must be specifically pleaded as such. *Sankey v. R. R. Co.*, 118 Iowa 39; *Mace v. Boedker*, 127 Iowa 731; *Martin v. Light Co.*, 131 Iowa 734; *Beresford v. Coal Co.*, 124 Iowa 39. The most that can be said of defendant's pleading in this respect is that it sets up an assumption of risk in the first form. There is no suggestion in it that plaintiff knew the defect complained of, or that he ought to have known it, nor any suggestion that he knew, or ought to have known, of the danger arising therefrom."

If, therefore, the appellee is correct in his interpretation of the pleading of the defendant, we should have to treat the defendant as presenting no other defense than a general denial. Turning to the answer of the defendant, we find that it charges specifically that the plaintiff did know of all the defects of instrumentalities of which he complains, and that he did know, or ought to have known, of the deficiencies and faults of method of which he complains, and that he appreciated, or ought to have appreciated, the risk and danger therefrom. In other words, it did plead assumption of risk in its true sense. It was, if proven, a complete affirmative defense. There was evidence in support of it. The court submitted to the jury only that form or phase of assumption of risk which constitutes a mere negation

of negligence. In so doing, the court misconceived the purport of defendant's affirmative defense and deprived it wholly of such defense. Assumption of risk in its true sense, and as an affirmative defense, does comprise risk and danger arising from such negligence of the employer as is known to the employee and the danger of which is appreciated by him.

II. Complaint is directed also to the instructions in that they failed to instruct the jury properly as to liability under the Federal Employer's Liability Act. The court instructed  that it must appear that the defendant, at the time of injury, was engaged in interstate commerce. It failed to instruct that it was essential to recovery that the plaintiff-employee, at the time of his injury, was engaged in interstate commerce. In view of the fact that the evidence shows conclusively, and without any dispute, that the plaintiff was so engaged at the time of his injury, no prejudice could have resulted to the defendant by reason of this omission. We call attention to the question only that it may not be overlooked on another trial.

III. The plaintiff endeavored to prove that the flame which caused the explosion in the alcohol can was burning at a leaking joint of the torch pipe. One difficulty confronting him was that  it required 100 pounds of air pressure to keep the torch burning. This pressure filled the pipe with gas. The release of the air pressure was the method of extinguishing the torch. The air being released, the torch became at once empty. Apparently the same process that extinguished the main flame of the torch necessarily extinguished the flame at the leaking joint, as well. To meet this situation, the plaintiff called two purported experts: one, Coss, a chemist, and the other, Ryan, an electrician. Each of them testified that he was familiar with the blow torch. The following evidence was introduced by plaintiff, over adequate objections (which we omit from the quotation):

"Q. Now, assume, Mr. Ryan, that, on September 15, 1927, plaintiff was employed in the operation of the Great Northern coal chute in Sioux City, Iowa; that, shortly before noon on that

day, he used the torch marked Exhibit A, which you have examined, to heat the heating plug on the kerosene engine at said coal chute; that he at that time ignited said torch in heating said plug; the torch had burned under full pressure with a heating flame for about 10 or 15 minutes, in the usual manner of operation, as you have testified; that, about 11:45 A.M. on said day, the plaintiff, for the purpose of extinguishing the flame in the torch, opened the air exhaust valve, and continued to turn the same until the roaring sound of the flame in the torch had stopped. Assume, further, that, at a point in the feed line of said torch, and about two and a fourth inches above the pan of said torch, and at a point where said feed pipe makes a joint with the upper part of the burner, there was a leak, through which fuel in said torch escaped, so that a flame from one-fourth to one-half inch in length burned during the operation of said torch as aforesaid. Assume that the torch had been in regular use in said coal chute for at least a year, and was ignited and used two or three times a day in heating said heat plug on the engine; that the fuel used in said torch was kerosene, and, on September 15, 1927, there was some water in the fuel tank, and that the kerosene and water in said tank was yellow and rusty in color; assume that, approximately an hour after plaintiff had turned the screw in the air exhaust valve, and roaring sound of the flame in the torch had stopped, the plaintiff, for the purpose of igniting the torch again, was pouring alcohol into the pan on said torch, which torch was placed on a bracket, and attached to one side of the engine, about five or six inches from the floor of the room in which the torch was, and the top of which was encased in a cone, extending from the engine and covering the top part of the torch and extending two or three inches above the generating pan of the torch, from the spout of the gallon can of alcohol similar to Exhibit B, which you have examined, except that there was a bottom in said can, which can he was holding in his hands; that there was an opening in the top of said can, which was uncovered; that, as plaintiff was pouring the alcohol into the pan on the torch, an explosion occurred inside the alcohol can of the alcohol, blowing out the bottom of the can. Assume that, after turning the screw in the air exhaust valve as aforesaid, and prior to the explosion, the plaintiff had not poured any alcohol into the pan of the torch,

except as aforesaid, and had not ignited any alcohol in said pan; that no alcohol or other inflammable fluid was burning in the pan of the torch at the time the plaintiff commenced to pour alcohol into the pan as aforesaid; that plaintiff did not ignite the alcohol he was pouring into said pan by a match or otherwise, prior to the explosion; that, except the said torch was ignited and burned as aforesaid at various times, there was no fire or flame of any kind ignited or burning in the engine room where said explosion occurred; that the temperature of said room was about 80 degrees Fahrenheit. Basing your opinion upon the facts as stated to you, and upon your examination of the torch, Exhibit A, and the alcohol can, Exhibit B, as you have testified to, what do you say as to whether or not the pan into which the alcohol was poured *might* have been hot enough to cause an explosion, in the absence of a flame? A. No. Q. What would you say as to whether or not a flame *might* have continued to burn in said torch an hour or more after plaintiff turned the screw in said air exhaust valve and the roaring sound of the flame in said torch had stopped? A. It is possible. Q. Well, Mr. Ryan, I say, to the probability of it? Q. Rather than possible? A. If any pressure were left in the tank, the torch would continue to burn.''

To confine expert testimony to matters of expert knowledge and opinion presents some practical difficulties, but such should be the objective. The plaintiff had a right to prove his allegations pertaining to the flame by circumstantial evidence, if he could. But it was not permissible to him by a hypothetical question to gather his circumstances into a sheaf and hand them to a purported expert for approval. What was asked of the expert was that he draw inferences of fact from the circumstances related. The question could as well have been put to any other witness. If this witness could properly draw the inference which he did upon the circumstances related to him, then the jury could have drawn such inference without his testimony. Moreover, the final word of the testimony lacked value. The net result of it was that, if there be sufficient air pressure, the flame *might* burn for an hour or more. There was no proof of sufficient air pressure. On the contrary, the proof was that the air pressure had been released. The net result is thereby further

diluted and reduced to this syllogism: The air valve *might* be clogged; if clogged, some air pressure *might* remain; if sufficient air pressure remained, the flame *might* burn at the leaking joint. The same hypothesis would make it burn at the spout. It was not burning at the spout.

Substantially the same questions were put to the witness Coss, and answered in like manner. We hold that this testimony was inadmissible.

IV. It is urged by appellant that the evidence was not sufficient to warrant the verdict, and that its motion for a directed verdict should have been sustained. Inasmuch as the only relief we can grant is a new trial, and this must be had for the reasons indicated in the foregoing, and as this would be so even if we were to hold evidence in the present record insufficient to sustain the verdict, we deem it our proper course not to express or form an opinion on that question at the present time. Additional evidence may be produced on a new trial.

For the reasons here indicated, the judgment below is—
*Reversed.*

ALBERT, C. J., and FAVILLE, KINDIG, and GRIMM, JJ., concur.